# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

METHODS RESEARCH, INC.

       Plaintiff,

vs.

       Case No. 23-2136-JAR-BGS

OTTAWA BANCSHARES, INC., FIRST BANK
KANSAS, FIRST KANSAS BANK, LYON
COUNTY STATE BANK, and COMMERCIAL
BANK,

       Defendants.

## MEMORANDUM & ORDER ON MOTION FOR SANCTIONS

NOW BEFORE THE COURT is Plaintiff's Motion for Sanctions (Doc. 65), arguing that

Defendants should be punished for failing to produce certain documents in response to written

discovery requests and direct communications from Plaintiff's counsel. For the reasons set forth

herein, Plaintiff's Motion for Sanctions is **DENIED** but with the Court ordering certain procedural

relief.[1]

---

[1] Also pending before the Court is Defendants' Motion to Seal (Doc. 71) relating to Plaintiff's proposed exhibits Nos. 65-4, 65-5, 65-6, and 65-7. Although Plaintiff does not oppose the motion, Plaintiff has indicated it "does not claim any confidentiality" as to the documents. (Doc. 66.) "There is a longstanding common-law right of public access to judicial records." *McWilliams v. Dinapoli*, 40 F.4th 1118, 1130 (10th Cir. 2022). A party seeking to seal a judicial record bears a heavy burden to show a "significant interest that outweighs the public interest in access to the records." *Id.* (internal quotation omitted). Here, Defendants' motion fails to meet these legal standards for sealing. Defendants states that "[t]he exhibits submitted by Plaintiff include excerpts from an extremely detailed corporate representative deposition regarding the Defendants' financial operations and revenue, and emails outlining the Banks' internal operating procedure, profit, expenses, and revenue regarding Plaintiff's consulting services." (Doc. 71, at 2.) Defendants continue that "injury to [them] would result" if the documents are not sealed because of their confidential financial nature. (*Id.* (citing *Uhlig LLC v. Corelogic, Inc.*, No. 21-2543-DDC, 2024 WL 1703557, *2 (D. Kan. April 19, 2024).) Although the Court has reviewed the exhibits, it is not clear what portions of the exhibits contain the described information. While the exhibits appear to be email correspondences discussing business matters, the correspondence does not appear to contain any specifics regarding operating procedures, profits, expenses. Accordingly, the movant has not made a showing that the exhibits qualify for sealing. Thus, Defendants' motion (Doc. 71) is **DENIED.**

1

## FACTUAL BACKGROUND

**A.     General Background.**

This is a breach of contract case.  In September 2015, Plaintiff presented a proposal to implement an IT Consolidation Project for the four Defendant Banks that would require Defendants to pay a "Fixed Fee" of $1,000,000, as well as a "Variable Fee" equal to 50% of any revenue enhancements, process improvements, and expense reductions recommended by Plaintiff and implemented by the Defendants (Doc. 1, at ¶ 22.)  The Fixed Fee was paid by Defendants, but no Variable Fee was paid.

According to Plaintiff, "Defendants internally calculated [the] variable fee and represented [Plaintiff] was owed $0, despite internal Bank documents showing the [Defendants] realized an increase in revenues and a decrease in expenses directly attributable to implementing [Plaintiff's] recommendations." (Doc. 65, at 2 (citing Doc. 1, at ¶¶ 24-25; 34-35).)  Plaintiff contends that Defendants overstated their expenses and understated their savings in an effort to avoid owing any Variable Fee.  Both sides have prepared calculations of the Variable Fee owed, which vary substantially. Plaintiff filed this lawsuit to recover the Variable Fee it alleges Defendants owe.

**B.     Variable Fee Determination.**

According to Plaintiff, the present motion was necessitated by Defendants' "prolonged failure to produce critical source documents – specifically invoices – despite repeated requests and court-mandated obligations."  (*Id.*)  Plaintiff contends that Defendants "withheld these essential documents for years." (*Id.*)  Plaintiff continues that Defendants provided certain responsive invoices only after Plaintiff's experts "had fully formed their opinions, provided written reports, and one had been deposed."  (*Id.*)  Thereafter, "Defendants produced over 2,500 pages" of responsive documents "that had been in [Defendants'] possession all along, dating back to 2014."  (*Id.*, at 1.)

In support of their calculation of the $0 Variable Fee, Defendants submitted an excel document to Plaintiff that summarized their calculations. It apparently was "created by combining figures from hundreds of different underlying excel charts and documents, specifically including invoices from various vendors." (*Id.*, at 3.) The process of calculating Defendants' savings from converting to a new data processing vendor ("Jack Henry" or "JHA"), as recommended by Plaintiff, necessitated "comparing the invoices and the various components of the invoices." (*Id.* (citing Doc. 65-1, at 62:5-63:4).)

Angie Eilrich was the employee responsible for calculating the Variable Fee on behalf of Defendants. She testified that reaching the "data processing monthly savings" figure reported by Defendants required a comparison of monthly invoices from Defendants' prior data processing vendor (DCI) to the monthly invoices submitted by new vendor JHA. (Doc. 65-2, at 63:23-64:6; Doc. 65-3, at 141:25-142:5). When asked whether it was necessary to review at the underlying invoices to verify if Defendants' various summary charts are reliable, Ms. Eilrich testified:

> I believe them to be accurate based on the information that I requested from our people at the time. If you want to prove that, we would have to actually go back. I mean, I can't right now in this moment prove that to you without the documentation.

(Doc. 65-2, at 125:23-126:6.)

Plaintiff contends that it initially requested the invoices in 2018, when it was also trying to calculate the Variable Fee Defendants owed. According to Plaintiff, "Defendants repeatedly refused to provide [the invoices], and instead specifically instructed their employees to not provide [Plaintiff] with the invoices it was requesting." (Doc. 65, at 4 (citations to record omitted).) When asked why Defendants refused to provide Plaintiff with the requested invoices, Ms. Eilrich testified doing so was "an exhaustive process" and she "didn't see any need to provide it." (Doc. 65-4, at 181:19-25.)

**C.     Relevant Discovery.**

      **1.     Invoices requested at outset of litigation.**

Included in Defendants' Rule 26 initial disclosures, which were served on June 26, 2023, was the requisite listing of documents they may use to support their defenses. Therein, Defendants listed "sources of expenses, such as invoices and bills from companies recommended by Plaintiffs [sic], including JHA invoices and previous DCI invoices …." (Doc. 65-9, at 4.) Plaintiff's subsequent first Requests for Production of Documents included Request No. 34, which sought "[i]nvoices from DCI, JHA, and any other Data processing third parties to Defendants for the years 2014 through 2021." (Doc. 65-10 at 12.) Defendants responded on September 6, 2023, without objection, stating that they "previously Bates numbered and produced the requested documents to Plaintiff." (*Id.*)

Request No. 37 asked for invoices supporting Defendants' Variable Fee calculation and invoices from various vendors from 2014-2021. (*Id.*, at 13.) Defendants raised vagueness and ambiguity objections to Request No. 37 for its use of the terms "including detailed General Ledger information … ." (*Id.*) Defendant then responded that they "previously Bates numbered and produced responsive documents to Plaintiff." (*Id.*)

### 2. Second formal request for invoices and resulting Court involvement.

On April 5, 2024, Plaintiff submitted its second Requests for Production, to which Defendants responded on May 6, 2024. (Doc. 65-11.) Therein, Request No. 9 sought "[a]ll DCI invoices supporting Defendants' assertion that it incurred $1,295,661 in DCI conversion expenses." (*Id.*, at 8.) Defendants responded that they had produced the requested documents. (*Id.*)

The parties subsequently engaged in the "meet and confer" process regarding the invoices supporting the Defendants' Variable Fee calculation, which included a July 2, 2024, conference, and e-mail on July 9, 2024. (Doc. 65-12.) In the July 9 email to defense counsel, Plaintiff's counsel specifically asked for invoices and "the rest of the underlying documents that support the Banks' calculations." (Doc. 65-12, at 2.) Plaintiff then sent a "golden rule" letter to defense counsel on July

10, 2024, in which Plaintiff requested supplementation of several discovery responses, specifically including the invoices supporting Defendants' calculation of Variable Fees.  (Doc. 65-13, at 5-6.)

The Revised Scheduling Order included a deadline of August 12, 2024, for Plaintiff's expert disclosures.  (Doc. 32, at 2.)  Plaintiff sought and received an extension of this deadline to September 23, 2024, which Plaintiff contends was necessary "to provide Defendants time to supplement their discovery responses and produce the documents identified in Plaintiff's meet-and-confer communications."  (Doc. 65, at 6 (citing Doc. 65-14).)

Plaintiff contacted chambers for the undersigned Magistrate Judge on August 22, 2024, to request a pre-motion discovery conference with the Court regarding Defendants' responses to Plaintiff's Requests for Production; this resulted in a joint status report from the parties on August 27, 2024.  (Docs. 65-19, -20.)  The status report discussed, in part, that Defendants had not provided invoices as requested in the First Requests for Production No. 34 and Second Requests for Production No. 9 and that Defendants had not complied with F.R.C.P. 34(b)(E)(i) by organizing and labeling the documents to correspond to the categories in the request.  (Doc. 65-20.)  The parties were instructed to confer further; however, they were unable to reach an agreement.  (Doc. 65-21, at 2.)

On August 23, 2024, Defendants produced an additional 384 pages of documents, "noting that a supplemental response to the discovery request was forthcoming and that several other Banks were continuing their search."  (Doc. 77, at 4 (citing Doc. 77-7).)  Defendants made additional supplemental document productions on September 3 and 4, 2024.  (Docs. 65-22 and 65-23.)  Plaintiff contends, and Defendant does not dispute, that the August 23rd production, as well as the one on September 3, 2024, included invoices the Defendants had not previously produced.  (Doc. 65, at 6.)  Defense counsel emailed Plaintiff's counsel on September 4, 2024, stating that Defendant First Kansas Bank "does not have documents to produce related to DCI other than the few card related invoices they found from

December 2016 to May 2017, which we produced on August 6 as part of the July 10 response." (Doc. 65-24, at 4.)

The parties' telephone conference with the undersigned Magistrate Judge ultimately occurred on September 9, 2025. (Doc. 51, text Minute Entry.) During that telephone conference, defense counsel was instructed by the Court to provide written supplemental discovery responses by the end of that week, in which they would indicate which previously produced documents were responsive to which of Plaintiff's discovery requests. Defendants submitted their supplemental responses on September 11, 2024, but did not supplement Request No. 34. (Doc. 65-25, at 15.) They did, however, supplement Request No. 9 to provide Bates numbers for certain invoices that were produced on August 24 and September 3, 2024. (*Id.*, at 23-24.)

**3.    Invoices discussed during depositions.**

The next day, September 12, 2024, Plaintiff's counsel deposed Defendants' corporate representative, Ms. Eilrich, asking her questions about various internal emails in which Defendants instructed their employees not to provide invoices and other source documents to Plaintiff. (*See* Docs. 65-5, -6, -7, -8.) Plaintiff asserts that Eilrich "confirmed Defendants understood they need to provide all invoices and source documents supporting their Variable Fee calculation," citing the following testimony from her:

> Q. You agree it's only fair for [Plaintiff] to be able to review the invoices, the source documents supporting the banks' summary charts; right?
>
> A. I mean, I – I agree that – that we've been compelled to produce them, yes. At the time we felt like our worksheets and so forth were sufficient without having to go back to every invoice and every report. So as you know, how many there are.

(Doc. 65, at 7 (citing to Doc. 65-4, at 182:2-9).)[2]

---

[2] The Court notes that this page of the deposition transcript was not contained in Plaintiff's "Exhibit 3," which is Doc. 65-4. The Court could not find this testimony in any other exhibit to Plaintiff's Motion. Defendants do not, however, appear to dispute this testimony.

6

Plaintiff contends that its experts' opinions are, in part, based on Defendants' refusal to produce the underlying source invoices. (*Id.*, at 8.) Plaintiff produced its expert reports on September 23, 2024. Both of Plaintiff's retained experts rendered opinions relating to and criticizing the lack of source documents (the relevant invoices) Defendants provided to Plaintiff in support of Defendants' $0 Variable Fee calculations. (*See* Doc. 65-26, report of Daniel Welsh, at 3; Doc. 65-27, report of Mark Palmer, at 3.)

Palmer was deposed by Defendants on October 29, 2024, wherein he criticized Defendants' failure to produce the requested invoices and noted the resulting inability to verify Defendants' calculations. (Doc. 65-28, at 51:17-52:1, 62:20-63:8, 63:23-64:15, and 168:10-169:3.) Palmer testified that if Defendants had provided the requested invoices to Plaintiff, "we wouldn't be here today." (*Id.* at 101:17-102:4.)

Defendants, on the other hand, note that as of the date of that deposition, they had produced 12,739 documents "including more than 1,771 invoices from various third-parties." (Doc. 77, at 1.) Defendants continue by pointing out that both Palmer and Welsh testified they that had not been tasked by Plaintiff with independently reviewing available third-party invoices. (Doc. 77, at 10 (citing Doc. 77-10, Palmer Depo., at 67:4-8, 111:23-112:5, 117:16-18, 136:15-137:2 and Welsh Depo., Doc. 77-11, at 52:16-18, 53:7-11, 108:21-109:3.) In fact, Palmer testified that of the 12,000+ documents produced by Defendants, he only reviewed "[s]omewhere between 50 and 100 [documents]." (Doc. 77-10, at 11:20-12:7.) On the other hand, Palmer testified that he "wouldn't even attempt" doing this "[w]ithout having access to much more information than is presented here." (Doc. 77-10, at 136:15-137:2.)

### 4.   Additional invoice production after Plaintiff's expert deposed.

The day after Palmer's deposition, October 30, 2024, Defendants produced for the first time an additional 152 invoices totaling 2,477 pages. (Doc. 65-29.) According to Plaintiff, this "new

production" of documents included DCI and JHA invoices from 2014-2021 from three of the

Defendants.  Defendants also served their "Amended Supplemental Responses to Plaintiff's First and

Second Requests for Production," which included a supplemental response to Request No. 34

enumerating documents Defendants produced on August 23, 2024, September 3, 2024, and the

responsive invoices newly produced on October 30, 2024.  (Doc. 65-30, at 15-16 .)  The written

response stated that Defendants:

> have conducted an exhaustive search for all JHA and DCI related
> invoices for 2014 – 2021 as applicable to each bank based on
> conversion dates.  The banks are now producing supplemental
> documents to close any gaps that previously existed. If they were
> found to not be previously bates numbered and they were available,
> they have been identified and produced as part of this supplemental
> response.

(*Id.*, at 16.)  Plaintiff contends that Defendants' "'exhaustive search' should have occurred much

earlier."  (Doc. 65, at 9.)

Following Defendants' October 30 production, Plaintiff's counsel requested a second

deposition of a Rule 30(b)(6) corporate representative from Defendants regarding the newly produced

152 invoices.  (*See* Doc. 77-9, at 2-4, November 11-12, 2024, emails between counsel.)  In response,

Defense counsel subsequently proposed that, rather than an additional deposition, Plaintiff should

submit a targeted interrogatory addressing the issue.  (*Id.*)  Plaintiff's counsel responded that they

wanted to conduct the second 30(b)(6) deposition.  (*Id.*)  Defense counsel indicated the deposition

would be considered and asked Plaintiff's counsel to "please go ahead and send us your deposition

notice, including the specific topics that you intend to address per Rule 30(b)(6), with a tentative

placeholder date for the deposition sufficiently in the future to allow us to evaluate the notice, confer

with you regarding any objections to scope, and lock down a mutually agreeable date (assuming we can

find mutual ground to proceed without Court intervention."  (*Id.*)  The Court notes that these

November 2024 email communications occurred a month before the rebuttal expert deadline.

According to Defendants, Plaintiff did not submit a proposed 30(b)(6) deposition notice and/or engage in further discussion on these issues before filing the present Motion for Sanctions. (Doc. 77, at 5-6.)

On November 11, 2024, however, Plaintiff served Requests for Admissions on Defendants regarding missing invoices, asking Defendants to admit they failed to produce certain invoices. (*See generally* Doc. 77-5.) Defendants complain that these requests were served "seemingly without [Plaintiff] realizing Defendants had produced the specific invoices at issue (often years prior)." (Doc. 77, at 6.) In reality, Defendants identified additional invoices that had not yet been produced. (*Id.*; *see also* Doc. 81-1.) These 50 invoices, constituting approximately 1,600 pages, were subsequently produced on November 25, 2024 (one invoice), and December 9, 2024 (49 invoices). (*Id.*, at 6, 8.)

Plaintiff filed the present Motion for Sanctions on November 26, 2024. Plaintiff's rebuttal expert deadline expired on December 13, 2024, which the Court notes is after the parties engaged in discussions regarding whether Plaintiff would be allowed to take the proposed, additional Rule 30(b)(6) deposition by agreement. Discovery closed on December 31, 2024.

**D.    The Present Motion.**

Plaintiff argues that the alleged discovery abuses have caused it to be severely prejudiced, "as these documents were essential to verifying Defendants' $0 Variable Fee calculation, which is central to this dispute." (Doc. 65, at 2.) Plaintiff requests significant sanctions against Defendants, including the entry of default judgment because of "willful failure to comply with discovery obligations," striking Defendants' affirmative defenses and other pleadings, prohibiting Defendants from "presenting any evidence or argument related to the withheld invoices or any calculations based on those invoices at trial," and awarding Plaintiff attorney's fees and costs "incurred due to Defendants' misconduct." (*Id.*, at 1-2.)

Defendants respond that they "worked extensively to locate all third-party invoices and supplemented their production each time additional invoices were found." (Doc. 77, at 1-2.) Defendants complain that "[t]hroughout discovery, [Plaintiff] made repeated requests for the same material that Defendants had already provided … ." (Doc. 77, at 3.) The fact that thousands of pages of responsive documents were not produced by Defendants until the day after the deposition of Plaintiff's expert and again in December 2024 – months after Defendants received Plaintiff's discovery requests to which the documents were responsive – renders Defendant's complaint somewhat disingenuous. For instance, considering the documents were reviewed, complied and produced the day after Palmer's deposition, it is almost certain that Defendants had located this last batch of documents well before that deposition. Defendants also point out that the present motion was filed on the basis of their "supplemental production of 152 invoices," which "represented less than 9% of the total 1,771 invoices produced to [Plaintiff] by the time of filing." (Doc. 77, at 6.)

## ANALYSIS

### A.    Meet & Confer Process.

As an initial matter, Defendants argue that Plaintiff's motion should be denied for failing to comply with the "meet & confer" requirements of D. Kan. Rules. 37.1 and 37.2. (Doc. 77, at 6-7.) Rule 37.2 mandates that the court "will not entertain any motion to resolve a discovery dispute … unless the attorney for the moving party has conferred or has made reasonable effort to confer with opposing counsel concerning the matter in dispute prior to the filing of the motion." The Rule defines a "reasonable effort to confer" as "more than emailing, mailing, or faxing a letter to the opposing party. It requires that the parties in good faith converse, confer, compare views, consult, and deliberate, or in good faith attempt to do so." *Id.* Pursuant to Rule 37.1, after satisfying the meet & confer requirement, but prior to filing any discovery-related motion, "the party intending to file a discovery-

related motion must contact the court to arrange a telephone conference with the judge and opposing counsel."

Defendants argue that Plaintiff did not satisfy its meet & confer requirements because Defendants never conclusively refused a second 30(b)(6) deposition, but instead asked Plaintiff to submit a proposed deposition notice.  (Doc. 77, at 7.)  Defendants contend that rather than "respond to Defendants' invitation to find a resolution to this dispute," Plaintiff simply filed the present Motion for Sanctions "demanding that the Court, among other things, enter default judgment, strike all Defendants' affirmative defenses, and make a spoliation finding based on Defendants' production, rather than destruction, of 152 new invoices (adding to the 1,771 invoices Defendants previously produced)."  (*Id.*)  Defendants argue this is in violation of the mandates of D. Kan. Rules 37.1 and 37.2.  While it may have been preferable for Plaintiff's counsel to follow-up with defense counsel regarding the potential for an additional 30(b)(6) deposition, the Court acknowledges Plaintiff's assertion that "the corporate representative deposition was not a meet-and-confer attempt, but rather an attempt to gain evidence to support the instant Motion for Sanctions."  (Doc. 81, at 3.)

That stated, Courts in this District have determined that D. Kan. Rule 37.2 is inapplicable to motions for sanctions filed under Fed. R. Civ. P. 37(c), such as the present motion.  *Patton v. Sparks*, 23-3096-JWB-RES, 2024 WL 181826, at *4 (D. Kan. Jan. 17, 2024) (acknowledging that courts in this District "have found [D. Kan. Rule 37.2] does not apply in the context of a party seeking discovery sanctions)).  More specifically,

> the plain language of the local rule governs 'any motion to resolve a discovery dispute[.]'  D. Kan. Rule 37.2.  But, the Motion to Exclude under Rule 37(c) didn't present a discovery dispute.  Instead, the Motion to Exclude presented a motion for sanctions for failing to comply with discovery obligations.  In short, it's not a 'motion to resolve a discovery dispute[,]' as contemplated by D. Kan. Rule 37.2.

*Walker v. Corizon Health, Inc.*, No. 17-2601,-DDC, 2022 WL 1623823, at *2 (D. Kan. May 23, 2022).

While the meet & confer requirements do not come into play in the context of a motion for sanctions, this dispute arose well before the close of discovery.  Thus, Plaintiff could have taken steps to cure the prejudice while discovery was still open.  For instance, Plaintiff could have sent the 30(b)(6) deposition notice or could have asked the Court for a telephone conference to discuss these issues.  Regardless, the Court will not decide this motion on procedural or technical grounds.  Rather, the Court will analyze Plaintiff's motion on its substantive merits.

**B.      Application of Legal Standard to Facts Presented.**

"It goes without saying that '[t]he Federal Rules of Civil Procedure give a district court ample tools to deal with a recalcitrant litigant.'"  *Glenn v. Procter & Gamble Co.*, 2009 WL 10688943, *2 (D. Kan. Sept. 10, 2009) (citing *Jones v. Thompson*, 996 F.2d 261, 264 (10th Cir. 1993).  Plaintiff argues that tools relevant to the present circumstances include sanctions pursuant to Fed. R. Civ. P. 26(g) and 37(c), (d), and (e).  According to Plaintiff, Defendants have committed "blatant misrepresentations regarding the existence of responsive invoices that [Plaintiff's] representatives have been requesting since 2018 and [Plaintiff's] attorneys have been formally requesting in litigation since May 2023." (Doc. 65, at 9.)  Plaintiff points to the fact that 13 depositions have occurred and "Plaintiff's experts all formed and provided their opinions without having the benefit of these invoices to rely upon."  (*Id.*, at 9-10.)  Plaintiff remains concerned that Defendants continue to withhold relevant, responsive invoices in their possession, custody, and control.  (*Id.*)  Plaintiff argues that sanctions are warranted because

> Defendants … have no reasonable justification for failing to produce these invoices until only after Plaintiff's experts had formed their opinions and one had been deposed.  Defendants had these responsive documents – dating back to 2014 – all along.  Rather than producing them when asked multiple times, they instead misrepresented they had 'previously Bates numbered and produced the requested documents to Plaintiff.'

(*Id.*, at 10.)

In this context, the Court will discuss the Federal Rules upon which Plaintiff's request for sanctions relies and apply those rules to the pertinent facts as set forth by the parties. After this discussion, the Court will address the matter of sanctions.

1.     **Rule 26(g).**

Federal Rule 26(g) provides that "[e]very disclosure … and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name … ." The Rule continues that by signing the disclosure or discovery response, the signing attorney

> certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:
>
> > (A) with respect to a disclosure, it is complete and correct as of the time it is made; and
> >
> > (B) with respect to a discovery request, response, or objection, it is:
> >
> > > (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;
> > >
> > > (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and
> > >
> > > (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

Fed. R. Civ. P. 26(g). The Rule provides for sanctions for an "improper certification," stating that "[i]f a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." *Id.*

Plaintiff argues that Defendants' certified responses to Plaintiff's First and Second Requests for Production included explicit assurances that "all responsive invoices had been produced" when this was "patently false." (Doc. 65, at 10.) Plaintiff points out that the invoices Defendants failed to produce until October 30, 2024, "dated as far back to 2014 and were integral to fully evaluating Defendants' $0 variable fee calculation," which, according to Plaintiff, "demonstrate[s] a clear violation of Rule 26(g)" by Defendants. Plaintiff complains that Defendants' "repeated misrepresentations in certified responses and communications caused unnecessary delay, increased litigation costs, and prejudiced Plaintiff's ability to litigate its claims effectively," justifying sanctions under Federal Rule 26(g)(3). (*Id.*) Plaintiff asks the Court to award attorney's fees and costs incurred and, "given the pattern of intentional delay, Plaintiff requests further sanctions, including precluding Defendants from relying on the withheld invoices or their calculations based on the invoices at trial." (*Id.*) Defendants respond that Rule 26(g)(3) is inapplicable because Plaintiff "certainly provides no evidence that Defendants' counsel signed said responses without a good faith belief that the responses were 'consistent with the[ ] [Federal] rules and warranted by existing law.'" (Doc. 77, at 12.)

The Court notes that Plaintiff has outlined a sequence of events including 1) Plaintiff's repeated requests for documentation and invoices, 2) Defendants' repeated assurances that all responsive documents had been produced,[3] 3) followed by additional invoice productions, and 4) culminating in Defendants' ultimate production of a significant number of "newly discovered" invoices after it was too late for Plaintiff's experts to rely on them. Some 1,600 pages of such invoices were produced by Defendant as late as last month – weeks *after* the present motion was filed. That stated, Plaintiff, as the party seeking sanctions, bears the burden to prove by a preponderance of the evidence that sanctions are warranted. *Bays Explor., Inc. v. PenSa, Inc.*, No. 07-754-D, 2009 WL 10674518, at *6 (W.D. Okla.

---

[3] Defendants represented to Plaintiff on September 6, 2023 (Doc. 65-10), May 6, 2024 (Doc. 65-11), August 27, 2024 (Doc. 65-21), September 4, 2024 (Doc. 65-24), and September 11, 2024 (Doc. 65-25) that they had no additional responsive invoices to produce in response to Plaintiff's discovery requests.

May 27, 2009) (citing *Lobato v. Ford*, No. 05-1437-LTB-CBS, 2007 WL 3342598, at *8 (D. Colo. Nov. 9, 2007) and *Gates Rubber Co. v. Bando Chem. Indus.*, 167 F.R.D. 90, 108-109 (D. Colo. 1996) (identifying preponderance of the evidence as the standard for imposing non-dispositive sanctions)).  Further, Rule 26(g) focuses on the attorney's certification at the time the responses were made.  As such, the Court must evaluate the issue at the time of the certification, not with the benefit of hindsight.

According to the Advisory Committee Notes to Fed. R. Civ. P. 26(g), "[t]he duty to make a 'reasonable inquiry' is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances ….  In making the inquiry, the attorney may rely on assertions by the client and on communications with other counsel in the case as long as that reliance is appropriate under the circumstances."  Fed. R. Civ. P. 26(g) advisory committee notes (1980 amendments).  "The ultimate determination of what is reasonable is for the court to decide based on the totality of the circumstances."  *Thermal Sol., Inc. v. Imura Internat'l U.S.A., Inc.*, No. 08-2220-JWL-DJW, 2010 WL 11431562, at *12 (D. Kan. April 28, 2010) (citation omitted).

The Court acknowledges that a significant number of documents were produced late by Defendants.  However, there is a lack of direct evidence to establish a finding by the Court that defense counsel's certification that the responses were complete at the time they were signed was not to the best of defense counsel's knowledge, information, and belief formed after reasonable inquiry.  The Court is, therefore, unwilling to find that the certifications were improper and sanctions are not warranted under Federal Rule 26(g).

## 2.    Rule 37(c)(1).

Subsection (c)(1) of Fed. R. Civ. P. 37 states that if a party fails to disclose or supplement information as required by Rule 26(a) or (e), "the party is not allowed to use that information … to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  In addition, a court may "order payment of the reasonable expenses, including attorney's

fees, caused by the failure; … inform the jury of the party's failure; and … impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." Fed. R. Civ. P. 37(c)(1). The following potential sanctions are available under Rule 37(b)(2)(A)(i)-(vi):

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; [or] (vi) rendering a default judgment against the disobedient party[.]

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi).

The determination of whether such a discovery violation is "justified or harmless is entrusted to the broad discretion of the district court." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (citing *Mid-America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1363 (7th Cir.1996)). The court's discretion is to be guided by the following factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Id.* Plaintiff argues that each of these factors is present herein, which justifies the imposition of sanctions. (Doc. 65, at 11.)

Defendants respond that Rule 37(c)(1) does not apply because Defendants were not improperly withholding responsive documents. Rather, they contend they were *complying* with the Federal Rules by merely continuing to supplement their prior responses. According to Defendants, "[w]hile discovery was still open, Defendants located additional responsive documents and – in compliance with – Rule 26(e) gave those documents to [Plaintiff] in supplemental production." (Doc. 77, at 8-9.) The Court will now address each of the four *Woodworker's Supply* factors in the context of the parties' relative positions.

### a.     prejudice or surprise.

Plaintiff contends that it has suffered substantial prejudice as a result of Defendants withholding invoices that are "critical to verifying Defendants' $0 variable fee calculation." (Doc. 65, at 11.) Plaintiff continues that "[w]ithout these documents, [its] experts could not independently evaluate Defendants' methodology. The late production of 2,477 pages – after expert reports and depositions – further deprived Plaintiff of the opportunity to incorporate these materials into its case." (*Id.*)

Defendants argue their production "was both substantially justified and harmless" as they had produced approximately 90% of the relevant invoices in a timely manner. (Doc. 77, at 9.) Defendants continue that Plaintiff's experts could have just analyzed the 90% of the invoices that were produced. (*Id.*) They also argue that Plaintiff had Defendants' general ledger "that contains the relevant financial information for all known third-party invoices … ." (*Id.*)

Plaintiff describes this argument as a "red herring" because Defendants' allegedly incorrect calculation of the variable fee relied only on the invoice total while failing "to adjust for volume, third-party products, or new products. (Doc. 81, at 4 (citing Doc. 81-2, at 47:12-18).) According to Plaintiff,

> [t]he general ledgers and similar documents the Defendants produced in lieu of the requested invoices do not account for volumes, new products, replacement third-party products, or bank-driven decisions like the invoices do. Without the full set of source documents, [Plaintiff's expert Charles] Rogers testified he is unable to perform a full comparison of volume changes in order to properly perform the variable fee calculation.

(*Id.*, citing (Doc. 81-2, at 136:22-137:19, 143:14-25).)

Defendants' position is not persuasive. They seem to infer that they should be commended for failing to produce almost 10% of responsive documents – despite repeated requests from Plaintiff and the intervention of the undersigned Magistrate Judge. The Court finds that Plaintiff has adequately established how it was substantially prejudiced by Defendants' actions. This factor thus weighs in favor of imposing sanctions.

### b.    the ability to cure prejudice.

Plaintiff opines that the prejudice caused by Defendants "is incurable at this stage" as discovery closed on December 31, 2024, "expert reports are finalized, and over a dozen depositions have been conducted." (Doc. 65, at 11.)  Plaintiff does not, however, describe or explain how these dozen depositions were impacted by the absence of the invoices at issue.  Plaintiff argues that the harm caused would be compounded by a reopening discovery or allowing supplemental reports, which would result in significant delays and additional costs to Plaintiff.  (*Id.*)  Plaintiff continues that "[a]lthough there still remain additional invoices that Defendants still have not produced, even if Plaintiff was now able to receive all the invoices that it originally requested eighteen months ago, it is too late for Plaintiff to be able to use them." (*Id.*)

As discussed in the preceding subsection, Plaintiff has adequately established prejudice. Defendants' response brief does not directly address Plaintiff's assertion that the prejudice is incurable. Rather, Defendants rely on the position that Rule 37(c)(1) does not apply and "there is no harm" to Plaintiff. (Doc. 77, at 9.)  However, as discussed in Section D, "Procedural Remedy," *infra*, the Court has fashioned a set procedural steps to significantly alleviate, if not cure, the prejudice to Plaintiff. Thus, this factor does not weigh in favor of sanctions.

### c.     disruption of trial.

Plaintiff next argues that allowing Defendants to "introduce the withheld invoices or calculations derived from them" at trial would be disruptive and, in essence, would "reward Defendants for their discovery abuses" and "undermine the fairness" of the judicial process.  (Doc. 65, at 11.)  Plaintiff contends that Defendants should be prohibited from relying on invoices that were not produced "until it was too late for Plaintiff to use." (*Id.*)  Again, Defendants merely rely on their position that Rule 37(c)(1) is inapplicable. (*See generally*, Doc. 77.)

The Court finds that allowing Defendants to introduce at trial the withheld invoices or calculations derived therefrom could be potentially disruptive to the judicial process; however,

"disruption of trial is inapplicable at this stage of litigation." *A.H. ex rel. Hohe v. Knowledge Learning Corp.*, No. 09-2517-DJW, 2010 WL 4272844, at *7 (D. Kan. Oct. 25, 2010) (finding potential disruption of trial to not yet be applicable in Order filed the day before parties were to submit draft Pretrial Order and three days prior to the Pretrial Conference).[4]  Further, evidentiary determinations and trial remedies would be best addressed by the District Court during, or in preparation for, the trial of this matter.  Therefore, this factor is irrelevant to the Court's analysis of the present motion.

       **d.**       **bad faith or willfulness.**

Plaintiff argues it has established bad faith because Defendants' withholding of the invoices was intentionally designed to cause disadvantage to Plaintiff and "obstruct" the proceedings.  (Doc. 65, at 11.)  As Plaintiff asserts, "Defendants repeatedly certified that no additional documents existed, only to produce thousands of pages of responsive invoices after deposing Plaintiff's expert."  (*Id.*)  Defendants, on the other hand, opine that their actions demonstrate *compliance* with the rules of discovery because they were satisfying their duty to supplement their discovery responses.  (Doc. 77, at 9.)  The Court finds that the circumstances described by the parties do not necessarily establish bad faith on the part of Defendants as opposed to a willingness or attempt to comply with the discovery supplementation requirements of the Federal Rules of Civil Procedure.  This factor does not, therefore, weigh in favor of sanctions.

Considering all of the *Woodworker's Supply* factors, the Court denies Plaintiff's request for sanctions under Rule 37(c)(1) because this situation could, most likely, have been cured during the discovery period.  Plaintiff requested, and Defendant left the door open for, a second deposition of Defendants' Rule 30(b)(6) corporate representative regarding the new invoices.  Plaintiff instead chose to file the present motion rather than pursue the deposition.  Further, Plaintiff could have engaged the Court in an additional pre-motion discovery conference in an attempt to resolve the issue in a more

---

[4] These pretrial deadlines are currently suspended in the present case.  (*See* Doc. 93, Jan. 21, 2025, text Order.)

expedient manner.  Finally, Plaintiff had the time and opportunity to submit a rebuttal expert report as

the deadline to do so occurred after the supplemental documents were received from Defendant.

Simply stated, just because there was a failure to produce all of the requested documents in a timely

manner does not mean that the extreme remedies sought by Plaintiff are warranted.  Even so, in an

effort to significantly alleviate, if not cure, the prejudice suffered by Plaintiff, the Court has fashioned a

procedural remedy, discussed in Section D, "Procedural Remedy," *infra*.

    **3.**        **Rule 37(d).**

    Rule 37(d) provides for sanctions for a failure to respond to discovery or for evasive,

incomplete responses.  In that instance, courts may employ the sanctions from Fed. R. Civ. P.

37(b)(2)(A)(i)-(vi), discussed above, which include striking pleadings, entering default judgment, or the

barring of evidence.  Plaintiff argues that an evasive or incomplete disclosure, answer, or response to

discovery is to be treated as a failure to answer pursuant to Fed. R. Civ. P. 37(a)(4), but acknowledges a

split in authority as to whether sanctions are appropriate for evasive or incomplete responses as

opposed to a complete failure to respond.  (Doc. 65, at 12.)  The "majority view" is that "sanctions

may be imposed where evasive or incomplete responses impede discovery."  *Badalamenti v. Dunham's,*

*Inc.*, 896 F.2d 1359, 1363 (Fed. Cir. 1990) (citations omitted).  The *Badalamenti* court summarizes the

split as follows:

> Several courts hold that Rule 37(d) does not authorize an award of
> sanctions unless there is a total failure to respond to the discovery
> requests.  *See Fox v. Studebaker–Worthington, Inc.*, 516 F.2d 989, 995 (8th
> Cir.1975); *Fjelstad v. American Honda Motor Co.*, 762 F.2d 1334, 1339–40
> (9th Cir.1985); *Southard v. Pennsylvania R.R.*, 24 F.R.D. 456 (E.D. Pa.1959).
> Other courts award sanctions under Rule 37(d) where the evasive or
> misleading response is tantamount to no response at all.  *See Airtex Corp.*
> *v. Shelley Radiant Ceiling Co.*, 536 F.2d 145, 155 (7th Cir.1976); *Bell v.*
> *Automobile Club of Michigan*, 80 F.R.D. 228, 232 (E.D. Mich.1978), appeal
> dismissed, 601 F.2d 587 (6th Cir.), *cert. denied*, 442 U.S. 918, 99 S.Ct. 2839,
> 61 L.Ed.2d 285 (1979); *Fautek v. Montgomery Ward & Co.*, 96 F.R.D. 141
> (N.D.Ill.1982).  *See also Minnesota Mining & Mfg. Co. v. Eco Chem, Inc.*, 757
> F.2d 1256, 1260, 225 USPQ 350, 352–53 (Fed.Cir.1985) (rejecting the
> argument that interrogatory answers stating 'unable to respond' was a

response by which the party could avoid the sanction provisions of Rule 37(d)).

*Id.* Plaintiff acknowledges that the Tenth Circuit has not addressed this issue.  (Doc. 65, at 12.)

Plaintiff contends sanctions are warranted in this instance as a result of Defendants' evasive responses because Defendants made a "clear misrepresentation that requested documents did not exist."  (*Id.* (citing *Badalamenti*, 896 F.2d at 1363.)  Plaintiff continues that Defendants' "evasive responses forced Plaintiff to expend significant resources on repeated discovery efforts, only to discover that essential documents were withheld."  (Doc. 65, at 13 (citing Doc. 65-17, email delineating Plaintiff's "meet-and-confer" attempts).)

Defendants respond that Rule 37(d) is inapplicable to the present situation because the August 15 emails are not a "discovery response."  (Doc. 77, at 11.)  According to Defendants, Plaintiff's "complaints should be limited to Defendants' actual responses to discovery, per Rule 37(d), that were made within 30 days of [Plaintiff] filing this motion, pursuant to Local Rule 37.1(c), which excludes most of [Plaintiff's] meritless 'support.'"  (*Id.*)

Plaintiff replies that the "problem" with Defendants' position is that "at the time Defendants previously responded to discovery requests, Plaintiff had no reason to believe such responses were incorrect."  (Doc. 81, at 3.)  Rather, "[i]t was not until October 30[, 2024 that] Plaintiff learn[ed] that Defendants had been withholding responsive invoices from discovery for over a year."  (*Id.*)  The present motion was filed less than 30 days later on November 26, 2024.  (Doc. 65.)  The Court finds Plaintiff's reasoning to be justified.  That stated, the Court declines to determine whether Rule 37(d) sanctions are applicable to evasive or incomplete responses given the split of authority and the lack of Tenth Circuit guidance on the issue.

### 4.     Rule 37(e).

Plaintiff also relies on subsection (e) of Rule 37, which addresses a party's failure to preserve electronically stored information.  If a court finds that spoliation has occurred with the intent to

deprive the other party from using the information, courts may presume that the lost evidence was unfavorable to the depriving party, give adverse inference jury instructions, or enter default judgment against the depriving party.  Fed. R. Civ. P. 37(e).

Plaintiff contends that "either the Defendants have the remaining invoices in their possession, custody, and control and continue to fail to produce them, or they permitted the premature destruction of those documents which should have been preserved in anticipation of litigation."  (Doc. 65, at 14.) Plaintiff asserts that, starting with the outset of this dispute in 2018, it has requested, and Defendants have been aware that Plaintiff sought, the invoices supporting Defendants' $0 variable fee calculation. (*Id.*)  Plaintiff points to "extensive pre-litigation document exchanges" and mediation prior to this lawsuit being filed.  (*Id.*)  Plaintiff argues that Defendants are guilty of sanctionable spoliation by either failing to preserve the documents or continuing to withhold them from production. (*Id.*)  "Otherwise," Plaintiff contends, "Defendants will seek to benefit from their own use of these source documents at trial, while simultaneously keeping those same documents from Plaintiff."  *Id.*

Defendants respond that Rule 37(e) is inapplicable because there is no evidence they failed to preserve documents but instead have been supplementing their production.  (Doc. 77, at 12-13.)  The Court agrees with Defendant that Plaintiff has failed to establish that relevant documents have been destroyed and/or that spoliation has occurred.  Further, the Court finds that opining as to jury instructions "is inapplicable at this stage of litigation."  *A.H. ex rel. Hohe*, 2010 WL 4272844, at *7. Accordingly, the Court will not award sanctions under Rule 37(e).

**D.    Procedural Remedy.**

As discussed above, Plaintiff contends that it has been severely prejudiced by Defendants' discovery abuses because "these documents were essential to verifying Defendants' $0 Variable Fee calculation, which is central to this dispute."  (Doc. 65, at 2.)  Plaintiff has asked the Court to enter significant, if not extreme, sanctions against Defendants, including the entry of default judgment as a

22

result of "willful failure to comply with discovery obligations," striking Defendants' affirmative defenses and other pleadings, prohibiting Defendants from "presenting any evidence or argument related to the withheld invoices or any calculations based on those invoices at trial," and awarding Plaintiff attorney's fees and costs "incurred due to Defendants' misconduct." (*Id.*, at 1-2.)

Based on the facts presented by the parties, the Court finds that Defendants' reluctance or failure to timely produce all of the requested invoices – when coupled with assurances that all such documents had been produced – was, at best, a dilatory approach to discovery. At worst, Defendants' actions constitute knowing misrepresentations and/or attempts to undermine the integrity of the judicial process. Either way, although the Court is not prepared to recommend dispositive or trial-related sanctions to the District Court, it is necessary to alleviate the prejudice to Plaintiff.

In this regard, discovery will be re-opened for the limited purpose of Defendant producing a witness for a Rule 30(b)(6) deposition regarding the additional invoices. This deposition shall occur on or before March 14, 2025, and will be limited to 3 hours. Questioning may only relate to supplemental statements or opinions contained in the relevant expert report. **No additional discovery will be permitted**.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Sanctions (Doc. 65) is **DENIED** as more fully set forth above.

IT IS SO ORDERED.

Dated February 3, 2025, at Wichita, Kansas.

/s/BROOKS G. SEVERSON
Brooks G. Severson
U.S. Magistrate Judge