## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

METHODS RESEARCH, INC.

        Plaintiff,

vs.

OTTAWA BANCSHARES, INC., FIRST BANK
KANSAS, FIRST KANSAS BANK, LYON
COUNTY STATE BANK, and COMMERCIAL
BANK,

        Defendants.

Case No. 23-2136-JAR-BGS

## MEMORANDUM & ORDER ON MOTION TO STRIKE LIMITED OPINIONS

NOW BEFORE THE COURT is Defendants' "Motion to Strike Limited Opinions of Chuck

Rogers for Failing to Provide Rule 26(a)(2)(B) Report," with supporting memorandum.[1]  (Doc. 83, 84.)

Therein, Defendants argue that Rogers was improperly designated as a non-retained expert witness and

that he should be precluded from offering opinions formed after litigation began.  For the reasons set

forth herein, Plaintiff's motion (Doc. 83) is **DENIED**.

## FACTUAL BACKGROUND

### I.    Nature of the Case.

This is a breach of contract case.  In September 2015, Plaintiff presented a proposal to

implement an IT Consolidation Project ("the project") for the four Defendant Banks that would

require Defendants to pay a "Fixed Fee" of $1,000,000, as well as a "Variable Fee" equal to 50% of any

revenue enhancements, process improvements, and expense reductions recommended by Plaintiff and

---

[1] The Court notes that the parties' briefing is not in compliance with D. Kan. Rule 7.1 regarding page limitations  The
parties are directed to comply with this and all other local rules going forward.

implemented by the Defendants (Doc. 1, at ¶ 22.)  The Fixed Fee was paid by Defendants, but no Variable Fee was paid.

According to Plaintiff, "Defendants internally calculated [the] variable fee and represented [Plaintiff] was owed $0, despite internal Bank documents showing the [Defendants] realized an increase in revenues and a decrease in expenses directly attributable to implementing [Plaintiff's] recommendations." (Doc. 65, at 2 (citing Doc. 1, at ¶¶ 24-25; 34-35).)  Plaintiff contends that Defendants overstated their expenses and understated their savings in an effort to avoid owing any Variable Fee.  Both sides have prepared calculations of the Variable Fee owed, which vary substantially. On March 24, 2023, Plaintiff filed this lawsuit to recover the Variable Fee it alleges Defendants owe.

## II.    Rogers' Role with Plaintiff.

Charles Rogers is a self-employed independent contractor who does freelance work.[2]  His direct involvement in the transactions giving rise to this litigation began in 2015.  According to Plaintiff, Rogers "developed his methodology for calculating the variable fee" during this "pre-litigation" period.  (Doc. 88, at 2.)  In his role for Plaintiff, Rogers consulted with Plaintiff on the underlying project and its implementation.  Plaintiff engaged Rogers' services to assist with the analysis of Defendants' existing contracts with various third-party vendors and also attempt to negotiate more favorable contractual pricing with vendors.  (Doc. 84-2, 7:13-8:8.)  Rogers was involved in negotiating new agreements with Jack Henry (a provider that replaced one of Defendants' then-existing data processing vendors) and Mastercard (as Defendants previously used Visa).  (*Id.* at 8:23-9:9; *see also* Doc. 88-2, at 8:23-9:3.)  After Plaintiff's work transitioned into the implementation phase, Rogers' facilitated communications with Jack Henry. (Doc. 84-2, at 8:9-22.)  Rogers' background does not include an accounting degree or licensure as a Certified Public Accountant.  (*See* Doc. 84-2, 6:8-16.)

---

[2] Rogers previously was a W2 employee of Plaintiff from 1999 to 2005 or 2006.  (Doc. 84-2, at 6; Doc. 88-1, at 7-11.)

Plaintiff's expert witness disclosures were served on September 3, 2024, identifying Rogers as a non-retained expert who is not required to provide a written report under Fed. R. Civ. P. 26(a)(2)(C). (Doc. 84-3.)  Defendants concede Rogers' work "obviously makes him a key fact witness" and, therefore, Defendants' do not challenge his ability to testify "to those things he understood, saw, heard, did, or otherwise observed during the time that he was participating in events that gave rise to this litigation."  (Doc. 84, at 1.)  According to Defendants, however,

> [p]er Fed. R. Civ. P. 26(a)(2)(C), Mr. Rogers may also be allowed, as a fact witness, to offer testimony that might include some opinions falling within Fed. R. Evid. 702, 703, or 705 to the extent they were opinions expressed during Mr. Rogers pre-litigation work with MRI and Defendants ("Banks" or "Defendants").  Defendants' Motion is not aimed at striking Mr. Roger's fact-witness based testimony or opinions during his pre-litigation work.
>     Defendants' Motion is aimed at opinions Mr. Rogers formed after his role as a percipient witness ended (and certainly any expert opinions formed after this litigation began).

(*Id.*)  Defendants continue that to the extent Rogers intends to provide expert opinions formed during the litigation "based on new facts or data he or [Plaintiff] received after his role as a percipient witness ended and litigation had begun," Plaintiff was required to provide a report from Rogers that complies with Fed. R. Civ. P. 26(a)(2)(B).[3]  Defendants thus ask the Court to determine whether Rogers "will be allowed to offer such new opinions despite the fact he has only been disclosed as a non-retained expert pursuant to Rule 26(a)(2)(C)."  (*Id.*, at 2.)  In this regard, Defendants compare work Rogers completed prior to this litigation with tasks he performed after litigation commenced.

## III.    Rogers' Opinions in this Case.

### A.    Rogers First Deposition.

---

[3] As discussed more fully below, the Fed. Rule Civ. P. 26 requires this report to contain:  (i) "a complete statement of all [such] opinions the witness will express and the basis and reasons for them"; (ii) "the facts or data considered by the witness in forming them"; (iii) "any exhibits that will be used to summarize or support them"; (iv) "the witness's qualifications, including a list of all publications authored in the previous 10 years"; (v) "a list of all other cases in which, during the previously 4 years, the witness testified as an expert at trial or by deposition"; and (vi) "a statement of the compensation to be paid for the study and testimony in the case."

3

Rogers was initially deposed for this litigation on August 21, 2024 ("August deposition"), prior to Plaintiff's expert designations.  Rogers testified he was involved in discussions with Defendants regarding Plaintiffs' variable fee and that on February 26, 2021, he provided Defendants with a spreadsheet focusing only on Defendant First Bank Kansas. (*Id.*, at 96:5-97:24.)  Rogers indicated his goal with that particular spreadsheet was to "come to an agreement on the savings for First Bank Kansas as well as for the process of calculating those savings." (*Id.* at 97:7-12.)  Defendants did not fully agree with Rogers' calculation process. (*Id.* at 100:12-101:17.)  That stated, Rogers testified that he did not recall additional discussion with Plaintiff as to Defendants' response and did not recall doing additional work in consideration of Defendants' response. (*Id.*)

### B.    Plaintiff's Expert Disclosures.

Approximately two weeks after Rogers' deposition, Plaintiff's expert witness disclosures were served on September 3, 2024, identifying Rogers as a non-retained expert who is not required to provide a written report under Fed. R. Civ. P. 26(a)(2)(C). (Doc. 84-3.)  Plaintiff indicated Rogers would testify as to various opinions, including:

a) "the methodology employed by the Defendant[s] in calculating the variable fee at issue in this litigation was flawed" in various ways;

b) Defendants "should have employed the methodology provided to them by Plaintiff";

c) Rogers opinion of "the correct methodology to follow in calculating the variable fee at issue in this litigation";

d) Rogers' "own calculations of Plaintiff['s] variable fee"; and

e) Rogers view of industry practices "based on his experience in the industry and working for customers and clients."

(*Id.*, at 3-4 (citing Doc. 84-3, at 2-4).)

Attached to the disclosure was a multi-tab Excel spreadsheet ("Excel spreadsheet" or "September 2024 spreadsheet") containing what Defendants describe as Rogers' "new calculations" of

what he believed to be the "correct" variable fee should be for Defendants.  (*Id.*, at 4.)  Defendants contend that neither Rogers nor Plaintiff "had  produced this new Excel spreadsheet to the Banks previously."  (*Id.*)  According to Defendants, it was "clear from Mr. Rogers' Excel spreadsheet that [he] was relying on [Defendants'] General Ledger to help form his new ultimate damages conclusions; [that] General Ledger was not disclosed to [Plaintiff] until August 16, 2024, as a production Defendants made during litigation."  (Doc. 84, at 4.)

The Court notes, however, that a previous incarnation of this same Excel spreadsheet was emailed by Rogers to Defendants in 2021 (hereinafter "2021 spreadsheet") to provide Defendants with Plaintiff's calculations "side-by-side with the Defendants' calculations, and the difference between the two."  (Doc. 88, at 4 (citing Doc. 88-1, at 179:21-181:10).)  Rogers testified that in the 2021 spreadsheet, he compiled "a fairly solid calculation based on the data I have, which for this bank was not complete, but at that point as complete as I could get from them."  (Doc. 88-2, at 98:7-14.)  He continued that the 2021 spreadsheet "probably had 15 or 20 tabs" that provided "detail on all of [Plaintiff's] markups and analysis" of the Defendants' variable fee calculation, focusing "solely" on Defendant First Bank Kansas.  (*Id.*, at 96:2-97:6.)  That stated, Rogers had been attempting to work through input relating to all four banks as far back as 2019, but was missing supporting information from Defendants.  (Doc. 88-1, at 161:20-162:13.)  Further, as of February 2021, it was understood by the parties that the same calculation process applied to First Bank Kansas in the 2021 spreadsheet would then be applied to the remaining Defendant Banks.  (*Id.*, at 179:12-180:22.)

To create the tabs and the calculations on the 2021 spreadsheet, Rogers took the information supplied by Defendants; in "some cases [he] had to assume that [the provided information was correct because [he] didn't have the original data and calculated the savings and corrected any calculation errors that [he] found and came up with a new total."  (*Id.*, at 99:2-8.)  Rogers continued that he

attempted to calculate the actual savings realized by Defendants to reach the variable fee "to the best of [his] ability, with the incomplete information [he] had." (*Id.*, at 82:4-14.)[4]

### C.    Rogers' Second Deposition.

Following Plaintiff's expert disclosures on September 3, 2024, Rogers was deposed again on November 4, 2024. (*See generally* Doc. 84-1, hereinafter "November deposition.") Therein, Rogers confirmed he is neither an owner nor an employee of Plaintiff and did not have a written contract with Plaintiff on this project. (*Id.* at 5:11-18). Rather, Rogers is to receive 22.5% of Plaintiff's receipts, minus expenses, including any recovery Plaintiff received in this lawsuit. (*Id.*, at 5:19-6:8.) Rogers indicated he was not paid for the deposition or for creating the Excel spreadsheet. (*Id.* at 6:9-19.) Rogers testified he had not seen Plaintiff's expert disclosures prior to this deposition, but indicated he had supplied the information regarding his specific opinions listed therein. (*Id.* at 23:7-24:18; 25:11-14.)

Rogers testified that he started the spreadsheet in 2018 and had continued work on it in October 2021. (*Id.*, at 85:8-86:17.) He continued that the "most recent tab," was created sometime after his August 2024 deposition. (*Id.*) Defendants contend that Rogers "subsequently clarified that he 'did some updates at the end of August after my [fact witness] deposition and then a final update . . . after that.'" (Doc. 84, at 5.) The Court notes, however, that this quoted testimony is not contained in any of the deposition excerpts Plaintiff has provided as exhibits to this motion.[5]

---

[4] Plaintiff contends that Rogers "continually requested Defendants to provide the source documents they relied upon to reach their variable fee calculation," but that Defendants "repeatedly refused to provide them, and instead specifically instructed their employees to not provide … Rogers with the documents he requested." (Doc. 88, at 4-5 (citing Doc. 88-2, at 78:3-16 ("I was just continually waiting on the base data to calculate the numbers properly."); Doc. 88-6, at 175:2-25; 176:11-177:10 (citing Doc. 88-7), 179:7-14; 180:7-181:25 (citing 88-8 and 88-11), at 189:12-192:18 (citing Doc. 88-9), 192:23-194:18 (citing Doc. 88-10), and 197:18-25).)

[5] Defendants site "Ex. B, 8/21 Rogers Dep.," at 81:17- 21 and 86:12-17. The Court notes that Defendants' "Exhibit B" (Doc. 84-1) is Rogers' November 4, 2024, deposition, while his August 21 deposition is "Exhibit C" (Doc. 84-2). Regardless, neither deposition transcript excerpt contains the quoted language.

Defendants next contend that Rogers admitted he "had not previously presented certain opinions (opinions he now wants to offer at trial) to anyone prior to MRI's Disclosure, such as his opinions regarding when the 50% deduction to MRI's variable fee should be applied." (Doc. 84, at 5.) In support of this statement, Defendants cite Rogers November 4, 2024, testimony (Doc. 84-1, at 162:1-8) wherein he testifies, "Never addressed it at all, never even looked at it." Defendants' assertion is misleading, however, as the question posed to Rogers includes the temporal parameter of "**[a]s of March 31 of 2021**" (*id.* (emphasis added)), rather than limiting his response to opinions he generated after his August 2024 deposition or after Plaintiff's subsequent expert disclosures.

Plaintiff's position is that after this lawsuit was initiated, it continued to receive the source documents Defendants relied upon to calculate their version of the variable fee. (Doc. 88, at 5.) Plaintiff contends that Rogers then utilized these documents as they were produced "to simply update his prior calculations" from the 2021 spreadsheet. (*Id.*)

As to this September 2024 spreadsheet, Rogers specifically testified that it was "an ongoing document basically the banks spreadsheet with me making notes as I got additional data that I worked on for years, and I did some updates at the end of August after my deposition and then a final update in the next tab after that." (Doc. 88-5, at 81:17-21.) Rogers continued that "every time [he] got additional data, [he] would apply it to the spreadsheet and update the numbers." (*Id.* at 83:11-13). Rogers' November deposition testimony continues:

> A. … I mean, this is a spreadsheet I started in probably 2018 and worked on continuously as information dribbled in, and I continually updated it. Sometimes I'd go back and label tabs because I'd get so many tabs because I had so many versions, because again, I'm just trying to build to a place where I finally have numbers that I think are reliable, and I'm still not there, still don't have the data I need to finish this. So if I got all the data, it would change again.

> Q. Again, when did you do this work, though? When did you start on this? I mean, not way back, but did you start on it before your deposition?

> A. Started on it in 2018 after I got the all banks spreadsheet.

7

(*Id.*, at 84:23-85:12).

As such, Plaintiff argues that "Defendants' assertion that Mr. Rogers did not form his opinions until after his August 21 fact witness deposition is simply incorrect." (Doc. 88, at 6.) Plaintiff continues that Rogers

> did not form his opinions or prepare his calculations for the first time after litigation was filed, but rather simply updated his prior calculations with documents received for the first time through the litigation process. These are opinions Mr. Roger developed during litigation; he has held them since 2018. The final numbers have changed as a result of Defendants finally producing documents MRI (specifically, Mr. Rogers) has been requesting all along.

(*Id.*)

The parties participated in a pre-discovery motion telephone conference with the undersigned Magistrate Judge on December 17, 2024. During that teleconference, Plaintiff maintained the position that Rogers was properly disclosed and that it did not intend to provide Defendants with a Rule 26(a)(2)(B) report for any expert opinions he might offer at trial. Plaintiff's counsel reiterated this position to defense counsel the next day. (Doc. 84, at 6-7.)

## ANALYSIS

### I.    Timeliness of Objection.

As an initial matter, Plaintiff argues that Defendants' motion should be denied for failure to comply with Section 2(d) of the Scheduling Order, which requires the parties to "serve any objections to such disclosures (other than objections pursuant to Fed. R. Evid. 702-705, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), or similar case law), within 14 days after service of the disclosures." (Doc. 88, at 1 (citing Scheduling Order, Doc. 14, at 4).) Plaintiff points out that it disclosed Charles Rogers as a nonretained expert witness on September 23, 2024, "listing his opinions and providing an Excel document updating his prior calculations of the variable fee at issue in this lawsuit," making any objection by Defendants due by

October 7, 2024.  (*Id.*)  Defendants filed no such objection.  They did, however, initially file a Motion to Strike certain of Rogers' opinions on December 3, 2024.  (Doc. 70.)  That motion was denied, without prejudice, by the undersigned Magistrate Judge on December 5, 2024, for Defendants' failure to comply with the requirements of D. Kan. Rules 37.1 and 37.2, which mandate a "meet & confer" session between the parties as well as a pre-motion telephone conference with the Court.  (Doc. 73, 12/5/25 text Order.)

At the subsequent pre-motion telephone conference with the Court, Defendants were given a deadline of December 20, 2024, to refile their motion.  Defendants then filed the present Motion to Strike on December 20, 2024, almost three months after Rogers was first disclosed as a non-retained expert and a month and a half after his November 4, 2024, deposition.  Plaintiff argues that this motion is, therefore, "clearly untimely and should be denied outright on that ground alone."  (*Id.*, at 2.) Defendants reply that the parties discussed the circumstances relating to their objections to the Court during the December 18, 2024, pre-motion telephone conference, "which was held to specifically address these issues[.]"  (Doc. 91, at 8.)

Thereafter, at a deposition on December 19, 2024, counsel for Defendants again raised the subject of a potential written report from Rogers, with Plaintiff's counsel confirming that Plaintiff did not believe there were any valid technical or other objections Rogers' disclosures and refusing to submit a Rule 26(a)(2)(B) report to Defendants.  (Doc. 91, at 8; Doc. 91-1, at 281:13-23.)  Defendants contend that this is a "moot point."  (Doc. 91, at 8.)  Defendants also argue that the timing of the objections caused no prejudice because Plaintiff  had a

> full and fair opportunity to present its position for why [it] believes … Rogers' disclosure as a non-retained expert was sufficient, and both the Magistrate Judge (on December 18, 2024) and [Defendants] (on December 19, 2024) provided [Plaintiff] with an opportunity to voluntarily provide a Rule 26(a)(2)(B) specific to … Rogers' new opinions, and [Plaintiff] repeatedly expressed its desire not to do so.

(*Id.*, at 9.)

The Scheduling Order clearly provides that any technical objections must be served within 14 days and Defendants undoubtedly failed to comply with serving the objections in that timeframe. Even so, Plaintiff was aware of the issues raised in Defendants' motion. Further, Plaintiff was provided an opportunity to provide a written report from Rogers and declined to do so. In light of this, the Court declines to decide this motion on the issue of timing but will instead analyze the more substantive technical issues raised in Defendants' motion. Further, the Court finds that Defendants complied with their pre-motion and meet & confer duties pursuant to D. Kan. Rules 37.1 and 37.2.

## II.     Renumeration to Rogers.

Defendants first argument for excluding this portion of Rogers' expert testimony is the fact that he has entered into an agreement by which he will receive 22.5% of any judgment Plaintiff receives in this litigation. (Doc. 84, at 7.) Because of this agreement, Defendants raise concerns about Rogers' "substantial vested financial interest in the outcome of this litigation," which, they contend, is "effectively a 22.5[%] contingency payment." (*Id.*) Defendant asserts that, "[p]ursuant to Fed. R. Evid. 403, Mr. Rogers' testimony should be limited to only that of a fact witness, excluding expert opinions he admittedly formed . . . [after] August 21, 2024." *Id.* at 10.

Defendants concede that the Tenth Circuit has not "weighed in on the appropriateness of allowing an expert who has a contingent payment arrangement in place … ." (*Id.*) Rather, Defendants rely on an opinion from the District of Colorado, which appears to be "the only jurisdiction" within the Tenth Circuit that has addressed the issue. (*Id.* (citing *Midtown Invs., LP v. Auto-Owners Ins. Co.*, 641 F. Supp. 3d 1066, 1075 (D. Colo. 2022).) Plaintiff generally responds that Rogers' "commission-based payment structure" does not transform him from a fact witness to an expert witness. (Doc. 88, at 7-10.)

The Court finds Defendants' argument to be misplaced in the context of the present motion. Defendants frame their motion as technical or procedural in nature – whether Plaintiff should have

provided an expert report for a non-retained expert as to those opinions that were "formed after his role as a percipient witness ended (and certainly any expert opinions formed after this litigation began)." (Doc. 84, at 1.)  Arguments relating to whether Rogers' opinions should be limited under Fed. R. Civ. P. 403 are more substantive in nature and will not be considered by the undersigned Magistrate Judge at this time.  Defendants are, therefore, instructed to file an appropriate pretrial motion if they wish to exclude any or all of Rogers' expert testimony on substantive grounds.  Such motions will be determined by the District Court at the appropriate time.

### III.    Legal Standard Regarding Retained and Non-Retained Experts.

The disclosure of expert testimony is governed by Fed. R. Civ. P. 26(a)(2).  That subsection of Rule 26 mandates that in addition to initial disclosures, "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."  Fed. R. Civ. P. 26(a)(2)(A).  Subsection (a)(2)(B) governs witnesses who are required to provide a written report, and states that "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony" the disclosure must be accompanied by a written report, prepared and signed by the witness, and containing:

> (i)    a complete statement of all opinions the witness will express and the basis and reasons for them;

> (ii)    the facts or data considered by the witness in forming them;

> (iii)    any exhibits that will be used to summarize or support them;

> (iv)    the witness's qualifications, including a list of all publications authored in the previous 10 years;

> (v)    a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

> (vi)    a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).  Pursuant to subsection (a)(2)(C), if the witness is not required to submit a written report, the resulting expert disclosure must indicate:

> (i)    the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
>
> (ii)    a summary of the facts and opinions to which the witness is expected to testify.

Fed. R. Civ. P. 26(a)(2)(C).  Under Fed. R. Civ. P. 37(c)(1), "[i]f a party … fails to disclose information required by Rule 26(a) …, the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."

That stated, "a report is not required from every witness who may present evidence under Fed. R. Evid. 702, 703, or 705."  *Thermal Solutions, Inc. v. Imura Internat'l USA, Inc.*, 2010 WL 11431472, at *2 (D. Kan. April 28, 2010).  "'While [Fed. R. Civ. P. 26(a)(2)(B)] focuses on those who must file an expert report, by exclusion it contemplates that some persons are not required to file reports and that these include individuals who are employed by a party and do not regularly give expert testimony.'"  *Id.* (citing *Watson v. United States*, 485 F.3d 1100, 1107 (10th Cir. 2007)).  "The determinative issue is the scope of the proposed testimony."  *Full Faith Church of Love W., Inc. v. Hoover Treated Wood Products, Inc.*, 01-2597-KHV, 2003 WL 169015, at *1–2 (D. Kan. Jan. 23, 2003) (citing *Wreath v. United States*, 161 F.R.D. 448, 450 (D. Kan. 1995)).

> Where the testimony is based on facts learned by the witness designated as an expert during the course of his or her work or other involvement in the circumstances leading up to the litigation, the witness is not considered a retained or specially employed expert and no written report is required under Fed. R. Civ. P. 26(a)(2)(B).  Stated another way, **where the expert witness' testimony consists of information that was obtained by the witness by virtue of his or her role as an actor or viewer of the transactions or occurrences giving rise to the litigation, the witness is not considered a retained or specially employed expert and, thus, no written report is required** under Fed. R. Civ. P. 26(a)(2)(B).

*Thermal Solutions, Inc.*, 2010 WL 11431472, at *3 (citations omitted) (emphasis added). *See also Full Faith Church*, 2003 WL 169015, at *2 (holding that because the expert testimony involved was based on facts which the experts learned during the course of their work as general contractors for the plaintiff, they were not "retained" experts and no Rule 26(a) written report was required).

Conversely, when the witness's "proposed opinion testimony extends beyond the facts made known to him during the course of [his work for the disclosing party] and the witness is specially retained to develop specific opinion testimony, he becomes subject to the provisions of Fed. R. Civ. P. 26(a)(2)(B)." *Wreath*, 161 F.R.D. at 450. Stated another way, when an opining witness is asked to "develop specific opinion testimony" that goes beyond facts, information, or evidence the witness observed or knew from his pre-litigation relationship with the disclosing party, that scenario "demonstrate[s] that he was retained or specially employed to provide expert testimony in the case," thus requiring a Rule 26(a)(2)(B) report. *Chambers v. Fike*, No. 13-1410-RDR, 2014 WL 3565481, at *4 (D. Kan. July 18, 2014). *See also Cadence Educ., LLC v. Vore*, No. 17-CV-2092-JWB-TJJ, 2018 WL 2926442, at *3 (D. Kan. June 7, 2018) (holding that expert opinions "based upon information provided by others or from other sources, in a manner other than through his own direct or personal knowledge" necessitate a Rule 26(a)(2)(B) report).

Defendants concede that Rogers "may also be allowed, as a fact witness, to offer testimony that might include some opinions falling within Fed. R. Evid. 702, 703, or 705 to the extent they were opinions expressed during [his] pre-litigation work with [Plaintiff] and Defendants." (Doc. 84, at 1.) Defendants assert, however, that the question facing the Court "is simply whether … Rogers will be allowed to offer such new opinions despite the fact he has only been disclosed as a non-retained expert pursuant to Rule 26(a)(2)(C)." (Doc. 84, at 2.)

III.    **Application of Legal Standard to Facts Presented:  The Scope and Nature of Rogers' Opinion Testimony.**

As discussed in the factual section, *supra*, Rogers was initially deposed for this litigation on August 21, 2024, prior to Plaintiff's expert designations. Approximately two weeks after Rogers' deposition, Plaintiff's expert witness disclosures were served on September 3, 2024, identifying Rogers as a non-retained expert who is not required to provide a written report under Fed. R. Civ. P. 26(a)(2)(C). (Doc. 84-3.)

Attached to the expert disclosure was a multi-tab Excel spreadsheet ("Excel spreadsheet" or "September 2024 spreadsheet") containing what Defendants describe as Rogers' "new calculations" of what he believed to be the "correct" variable fee should be for Defendants. (Doc. 84, at 4.) Defendants had, however, received a previous incarnation of this spreadsheet in 2021 to provide Defendants with Plaintiff's calculations "side-by-side with the Defendants' calculations, and the difference between the two." (Doc. 88, at 4 (citing Doc. 88-1, at 179:21-181:10).) Rogers described the September 2024 spreadsheet as "an ongoing document" that he "update[d]" and "worked on for years … ." (88-5, at 81:17-21.) It is uncontested that the calculations contained in the spreadsheet were based on information supplied by Defendants. (Doc. 88-2, at 99:2-8.)

Rogers was subsequently deposed by Defendants a second time on November 4, 2024. (Doc. 84-1.) Rogers' September 2024 spreadsheet was marked as an exhibit and discussed during the November deposition. (Doc. 84-1.)

According to Defendants,

> there was no suggestion during [the August 21, 2024] deposition [Rogers] had formed these new opinions at that time. In fact, he admitted on November 4th he did not form those opinions until after his August 21st deposition. … Rogers' opinions and new calculations clearly were not formed as part of his earlier, pre-litigation engagement. Rather, after August 21, 2024, … Rogers was 'retained' or 'specifically employed to provide expert testimony in the case.' *See* Rule 26(a)(2)(B).

(Doc. 84, at 10-11.)  Defendants therefore assert that Rogers "wants to testify about more than just what he did for [Plaintiff] and [Defendants] before litigation started."  (Doc. 84, at 15.)  According to Defendants, Plaintiff

> wants … Rogers to offer brand new opinions about alleged industry standards based on [his] engagements with entities other than [Defendants].  [Plaintiff] wants … Rogers to offer new damages calculations, incorporating new data and information [Plaintiff] received during the litigation, that … Rogers admits he only started working up after his August 21, 2024[,] fact witness deposition.  These new opinions were created during litigation, not just in anticipation of litigation, and they are precisely the types of opinions that one would expect to see included in an independent damages expert's Rule 26(a)(2)(B) report.

(*Id.*)

Defendants continue that Plaintiff has offered no substantial justification for its failure to properly disclose Rogers' opinions and "[i]t should have been obvious" that Rogers' expert opinions and calculations formed after his first deposition required an appropriate disclosure and report.  (*Id.*) They also assert that they were unduly harmed by Plaintiff's failure to do so because it

> makes it difficult, if not impossible, for [Defendants] to adequately cross-examine … Rogers, understand his methodology, challenge his opinions under the *Daubert* standard, and be certain of the boundaries of the specific opinions [Plaintiff] will attempt to have him offer at trial. Pursuant to Rule 37(c)(1), … Rogers' improperly disclosed expert opinions should be excluded.

(*Id.*)  As such, Defendants argue that Plaintiff was "obligated to properly disclose Mr. Rogers pursuant to Rule 26(a)(2)(B) and provide a full, signed expert report."  (*Id.*, at 11.)

Plaintiff responds that "[r]ather than being 'retained' by a party, … Rogers is in essence a party and is the agent of a party" and was the Defendants' "key contact" from Plaintiff as to the consulting engagement prior to litigation of this matter.  (Doc. 88, at 10.)  Plaintiff points out that in Rogers' independent contractor relationship with Plaintiff during this pre-litigation time period, Rogers "was tasked with determining the monthly savings the Defendants realized as a result of the conversions he negotiated on their behalf."  (*Id.*)

The Court does not agree that Rogers was a party, in "essence" or in fact.  As discussed above, he was an independent contractor who consulted with Plaintiff on the underlying project and its implementation.  He was engaged by Plaintiff prior to this litigation to assist with the analysis of Defendants' existing third-party vendor contracts and attempt to negotiate more favorable contractual pricing with vendors.  (Doc. 84-2, 7:13-8:8; Doc. 88, at 2.)  As such, the Court's analysis will turn on whether Rogers' opinions at issue "go beyond the [Plaintiff's] prior course of business dealings" with Rogers, which would necessitate a report complying with Fed. R. Civ. P. 26(a)(2)(B)).  *Chambers*, 2014 WL 3565481, at *4.

In this regard, Plaintiff asserts that the work Rogers completed to calculate his estimate of the variable fee "was not done simply for litigation purposes" but rather commenced well before this litigation was initiated.  (Doc. 88, at 10.)  According to Plaintiff, Rogers did not engage in new analysis or issue new opinions, but "simply updated his figures to include documents only received for the first time from the Defendants through the power of the Court."  (*Id.*)  *See generally Methods Research, Inc. v. Ottawa Bancshares, Inc.*, No. 23-2136-JAR-BGS, 2025 WL 371425 (D. Kan. Feb. 3, 2025) (Order (Doc. 96) denying Motion for Sanctions).  According to Plaintiff, "[t]o this day, … Rogers still does not have all the necessary source documents from the Defendants."  (Doc. 88, at 10-11 (citing Doc. 88-5, at 35:2-4, 105:2-3, 9-10).)

> Had the Defendants simply provided … Rogers the documents he was requesting back in 2018, he could have updated his calculations then. Defendants now seek to benefit from their own obstruction and refusal to produce these documents by arguing that, because they refused to give [Plaintiff] the documents it requested until they were forced to in mediation, Mr. Rogers relying on those documents transforms him into a retained expert because he relies on documents obtained in litigation to update his figures. Mr. Rogers testified he has been attempting these calculations all along:  'all I was ever trying to do and still to this day is just get the proper information so I could even verify what was on the bank spreadsheet was correct. We weren't working back and forth. I was just requesting data and in many cases not getting it.'

(*Id.*, at 11 (citing Doc. 88-5, at 19:13-19).)

16

Plaintiff reiterates that Rogers began working on his variable fee calculations in 2018 and has "continually updated" this spreadsheet as Defendants produced additional documentation, "if for no other reason than to ensure [Plaintiff] was paid the variable fee it was owed." (*Id.*, at 11 (citing Doc. 88-5, at 84:23-85:12), and at 12.)  The Court acknowledges Plaintiff's continued struggles to get all relevant documentation from Defendants.  *See generally Methods Research, Inc.*, 2025 WL 371425 (Order (Doc. 96, Memorandum & Order denying Motion for Sanctions).)

In this context, Plaintiff argues that Rogers' opinions and calculations are not really opinions "formed during litigation" or "for the purpose of litigation," but are "instead opinions and calculations he has held all along and formed back in 2018 when the dispute between the parties first arose." (Doc. 88, at 12.)  Plaintiff continues that "[t]he only reason it was not until litigation that … Rogers was able to update his calculations with additional documents is due to the Defendants' own refusal to provide them when Mr. Rogers requested them earlier" (*id.*), referring to the documents that were the subject of Plaintiff's Motion for Sanctions (Doc. 65).

Plaintiff refers the Court to the *Thermal Solutions* decision, discussed *supra*, in support of its position.  (Doc. 88, at 13 (citing 2010 WL 11431472, at *6).)  In that patent infringement case, the expert at issue was the president of the corporate Plaintiff.  He had been identified as a non-retained expert on the issues of claim validity and infringement, leading Defendants to move the court to compel a report from him or exclude his testimony.  The *Thermal Solutions* court likened the corporate president to a treating physician, finding that

> [a]lthough his testimony may be based on scientific or other specialized knowledge, the testimony will be based entirely upon facts known to [the expert] before this litigation ever began. The Court finds that [the expert] has been involved in the transactions and occurrences leading up to this litigation from the very beginning.  [He] was involved in the development of the technology at issue in this case, he personally participated in the prosecution of the relevant patents and helped draft the specifications for their applications, he was involved in the negotiations of the license agreements with Defendants, and he worked with Defendants to develop products pursuant to those license agreements.

2010 WL 11431472, at *6.  The court concluded that the testimony of the expert therein consisted of "information and opinions that were obtained and formed by [him] by virtue of his involvement in the transactions or occurrences giving rise to the litigation," thus concluding that no expert report was required under Fed. R. Civ. P. 26(a)(2)(B).  *Id.*

Similarly herein, Plaintiff opines that Rogers' "opinions were obtained and formed by him by virtue of his involvement in those transactions and occurrences, and he would have been able to earlier provide his calculations had the Defendants merely given him the documents he was requesting in 2018."  (Doc. 88, at 14.)  The Court agrees.  Defendants even concede that Rogers "was involved in the underlying consulting and implementation work at issue."  (Doc. 84, at 1.)

The Court is not persuaded by Defendants' attempts to draw a bright line between Rogers' opinions formed during the "*pre-litigation* phases" of his engagement by Plaintiff versus his opinions that were developed after the lawsuit was filed.  (*See* Doc. 84, at 9 (emphasis in original).)  Defendants concede that the former do not require a written expert report but argue that the latter do.  This simplistic focus on the timing of Rogers' opinions is misguided.

The "determinative issue" is not *when* the opinion in question was formed, but rather "the scope of the proposed testimony."  *Full Faith Church*, 2003 WL 169015, at *1–2 (citing *Wreath v. United States*, 161 F.R.D. 448, 450 (D. Kan. 1995)).  Much like a non-retained treating physician can continue to opine regarding changes to an injured Plaintiff's treatment and medical condition during the course of litigation, Rogers – as a non-retained expert witness – should be allowed to update his pre-litigation, work-related calculations as Defendants continue to disclose information that directly impacts the prior calculations.

The Court also finds certain cases relied upon by Defendants are not analogous to the situation herein.  For instance, in *Beal v. Allard*, No. 17-2112-DDC-GEB, 2018 WL 5884541, at *4 (D. Kan. Nov. 9, 2018), the court held that it would prohibit testimony as exceeding the scope of the expert

designation to the extent the treating physician's opinions were to be based on "external records" from other healthcare providers given to the treating physician by plaintiff's counsel.  In the present situation, Rogers is not relying on "external records" from other experts or fact witnesses.  He is relying on records he and Plaintiff have been requesting from Defendants going back years before this litigation even began.  (*See* Docs. 65, 96.)

In *Chambers v. Fike*, also relied upon by Defendants, the Court was tasked with determining whether an expert was a "hired, retained expert … required to meet the Rule 26(a)(2)(B) requirements."  2014 WL 3565481, at *3, 4.  The expert therein had a prior relationship with Plaintiff involving tax preparation and business planning.  In that litigation, the expert opined as to the plaintiff's total economic damage opinions, which were arrived at "by calculating and adding past and future lost income."  *Id.*, at 4.  The Court held that the expert's opinions were

> based off several assumptions about [the plaintiff's] tree nursery business, including future crops sales spanning a ten year period.  These conclusions go beyond the prior course of business dealings with [the plaintiff].  Instead, they specifically opine on [the plaintiff's] alleged damages asserted in this case.

The Court therefore concluded that the expert must provide a report that complied with the requirements of Rule 26(a)(2)(B).

In the present case, however, Rogers' opinions are clearly based on information that should have been provided to him by Defendants during their business dealings with Plaintiff.  Defendants were simply not forthcoming with the information at issue.  (*See generally* Docs. 65, 96.)  The fact that Defendants did not provide the information in a more timely manner does not transform Rogers' opinions into those that "go beyond the prior course of business dealings" between the parties.  As such, the present situation is clearly distinguishable from both *Chambers* and *Beal*.

Based on the above, the Court finds that the opinions from Rogers at issue in Defendants' motion are not the type that would necessitate a report that is compliant with Rule 26(a)(2)(B). Defendants' motion is, therefore, **DENIED**.

IT IS THEREFORE ORDERED that Defendants' "Motion to Strike Limited Opinions" (Doc. 83) is **DENIED**.

IT IS SO ORDERED.

Dated March 13, 2025, at Wichita, Kansas.

/s/ BROOKS G. SEVERSON
Brooks G. Severson
U.S. Magistrate Judge