IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

METHODS RESEARCH, INC.,

    **Plaintiff,**

    v.

OTTAWA BANCSHARES, et al.,

    **Defendants.**

Case No. 23-2136-JAR-BGS

## MEMORANDUM AND ORDER

Plaintiff Methods Research, Inc. ("MRI") sued Defendants Ottawa Bancshares, Inc., First Bank Kansas, First Kansas Bank, Lyon County State Bank, and Commercial Bank for failing to pay a fee owed to it under a services contract. Following a protracted discovery dispute, Plaintiff moved for discovery sanctions against Defendants, and Magistrate Judge Severson denied sanctions.[1] Before the Court is Plaintiff's Motion to Review Magistrate Judge's Order Regarding Motion for Sanctions (Doc. 98).[2] The motion is fully briefed, and the Court is prepared to rule. As described more fully below, the motion is denied.

## I. Background

Plaintiff says that Defendants owe it money; Defendants deny that. Several years ago, Defendants hired Plaintiff as an IT consultant, and they agreed that in exchange for those services, Defendants would pay two fees: (1) a flat fee of $1,000,000 and (2) a variable fee, calculated as 50% of the savings (i.e., the combination of cost reductions and revenue enhancements) attributable to Plaintiff's recommendations. Defendants paid the flat fee but have

---

[1] Doc. 96.

[2] Defendants seek leave to file a surreply (Doc. 108). The Court finds that motion moot in light of this Memorandum and Order.

not paid the variable fee because, they say, there is nothing to pay: Defendants calculate the fee at $0. The parties must use Defendants' invoices to ascertain the amount of Defendants' savings, which in turn is used to calculate the variable fee amount. The invoices, then, form an essential part of this dispute because they are used to calculate the variable-fee amount.

And they have emerged as key documents during discovery. Defendants produced a tranche of invoices as part of its initial Rule 26(a)(1) disclosures. Plaintiff, suspicious that Defendant had not produced all the invoices, made a request for production under Rule 34[3] seeking more of Defendants' invoices. Defendants responded that they had already produced as part of their initial disclosures the invoices in their possession.[4] Plaintiff made a second request for production. Defendants again responded that they had already produced them.

But Defendants did eventually produce additional invoices. After the requests for production, the parties met and conferred about the discovery dispute, and Plaintiff's counsel sent Defendants' counsel a "golden rule" email again reiterating its request for the invoices. Still not receiving the invoices, Plaintiff requested a pre-motion discovery conference with Judge Severson, and finally, after the discovery conference, Defendants produced additional invoices. Defendants also informed Plaintiff that the banks were continuing to search for invoices. Defendants supplemented their response with additional invoices several days later and said they had no more invoices to produce.

Believing that Defendants had produced all invoices, Plaintiff's experts reviewed them. The experts used them to write their reports and to prepare for their depositions. Defendants deposed one of those experts, Mr. Palmer, on October 29, 2024. The next day, Defendants

---

[3] Fed. R. Civ. P. 34(a)(1)(A).

[4] Defendants also objected to the request on vagueness and ambiguity grounds.

produced 152 more invoices.  Defendants produced 50 more invoices days later on November 25 and then on December 9.

After the November 25 production, Plaintiff moved for sanctions against Defendants.  They moved for sanctions under Rules 26(g), 37(c)(1), 37(d), and 37(e), challenging Defendants' failure to timely produce the invoices and repeated assurances that they had no more invoices to produce.  Plaintiff requested the entire gamut of sanctions: entering default judgment against Defendants, striking Defendants' affirmative defenses and other pleadings, prohibiting Defendants from introducing at trial the withheld invoices or calculations based on those invoices, and awarding attorney's fees and costs.

Magistrate Judge Severson denied sanctions in a February 3, 2025 order.  She concluded that though the late disclosures prejudiced Plaintiff, the Court could cure that prejudice by permitting Plaintiff to take a second Rule 30(b)(6) deposition of Defendants' corporate representative—a request that Plaintiff made to Defendants a few days after the October 30 production.  Plaintiff now seeks review of that order.

## II.  Standard

Fed. R. Civ. P. 72 allows a party to provide specific, written objections to a magistrate judge's order.  The applicable standard of review depends on whether the magistrate judge's order relates to a dispositive or nondispositive issue.  A nondispositive decision is reviewed under a clearly-erroneous or contrary-to-law standard, and a dispositive order is reviewed de novo.[5]  The parties do not dispute that Judge Severson's February 3 Order should be considered nondispositive under Rule 72.

---

[5] Fed. R. Civ. P. 72.

Under the more deferential standard that applies to this Court's review of a nondispositive order, the Court must affirm factual determinations "unless the entire evidence leaves it 'with the definite and firm conviction that a mistake has been committed.'"[6] As to legal matters,

> the Court conducts an independent review and determines whether the magistrate judge['s] ruling is contrary to law. Under this standard, the Court conducts a plenary review and may set aside the magistrate judge['s] decision if it applied an incorrect legal standard or failed to consider an element of the applicable standard.[7]

The party seeking modification of the magistrate judge's order bears the burden to show that the order is clearly erroneous or contrary to law.[8]

## III. Discussion

Plaintiff seeks review of Judge Severson's denial of sanctions on four grounds: (1) Judge Severson applied the incorrect legal standard for finding a violation of Fed. R. Civ. P. 26(g); (2) Judge Severson failed to apply the *Erenhaus* factors for a violation of Fed. R. Civ. P. 37(c)(1); (3) Judge Severson's remedy for curing prejudice to Plaintiff did not in fact cure prejudice; and (4) Judge Severson did not sanction Defendants even after finding that their failure to produce prejudiced Plaintiff. Mindful of the standard of review for nondispositive motions under Rule 72(a), the Court rejects Plaintiff's grounds for review.

---

[6] *In re Motor Fuel Temp. Sales Pracs. Litig.*, 707 F. Supp. 2d 1145, 1147–48 (D. Kan. 2010) (quoting *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988)).

[7] *Id.* at 1148 (citations omitted).

[8] *Heartland Surgical Specialty Hosp., LLC v. MidWest Division, Inc.*, No. 05-2164, 2007 WL 9723883, at *3 (D. Kan. May 29, 2007) (placing burden on party seeking review).

### A. *Sanctions under Rule 26(g)*

Plaintiff argues that Judge Severson applied an incorrect legal standard—a so-called "direct evidence" standard—to Rule 26(g) sanctions, and therefore, the order is contrary to law. Rule 26(g) provides that a party's signature certifies that a "discovery response" is "complete and correct at the time it is made."[9] A party's compliance with the rule is evaluated as of the time of the disclosure, not with the benefit of hindsight. The party seeking sanctions must show by a preponderance of the evidence that sanctions are warranted.[10] Judge Severson concluded that Plaintiff did not carry its burden. Though acknowledging that Defendant produced several invoices after responding to the discovery requests, Judge Severson found that there was no "direct evidence" that Defendants' disclosures were not complete to the best of Defendants' knowledge at the time they were made.

The Court finds that Judge Severson's determination is not contrary to law. She articulated the correct standard for Rule 26(g) sanctions and correctly applied it when she concluded that no evidence showed that Defendants failed to conduct a reasonable inquiry to ensure that the responses were complete. Plaintiff latches onto a single phrase in the order—"direct evidence"—and argues that Judge Severson ratcheted up the showing required for 26(g) sanctions by looking for direct evidence of Defendants' malfeasance. Plaintiff says "such is not the law,"[11] yet Plaintiff offers no law that this is contrary to. And without showing what law the

---

[9] *Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1227 (10th Cir. 2015) (citing Fed. R. Civ. P. 26(g)(1), (3)); *see also* Fed. R. Civ. P. 26(g) advisory committee's note to 1983 amendment ("[T]he signature certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and comments available to him that are responsive to the discovery demand.").

[10] *Bays Expl., Inc. v. PenSa, Inc.*, No. 07-0754, 2009 WL 10674518, at *6 (W.D. Okla. May 27, 2009) (first citing *Lobato v. Ford*, No. 05-1437, 2007 WL 3342598, at *8 (D. Colo. Nov. 9, 2007); and then citing *Gates Rubber Co. v. Bando Chem. Indus.*, 167 F.R.D. 90, 108–09 (D. Colo. 1996)).

[11] Doc. 98 at 8.

order is contrary to, Plaintiff fails to meet its burden of showing that Judge Severson applied the incorrect law.

### B. Sanctions under Rule 37(c)(1)

Plaintiff next argues that the order is contrary to law because when considering sanctions under Rule 37(c)(1), Judge Severson applied the *Woodworker's*[12] factors instead of the *Ehrenhaus*[13] factors. Rule 37(c)(1) permits the court, as a sanction for failing to disclose or supplement information as required by Rule 26(a) and (e), to exclude the withheld information as evidence at trial, unless the noncompliance was "substantially justified or harmless."[14] And when exclusion of evidence would "ha[ve] the necessary effect of dismissal,"[15] the court must also consider the efficacy of lesser sanctions—a consideration featured as the fifth *Ehrenhaus* factor. So the Court first determines whether a party failed to disclose or supplement in violation of 26(a) or (e). Then it determines whether the noncompliance was substantially justified or harmless; to do so, it applies the *Woodworker's* factors.[16] Then, if excluding the evidence would be tantamount to dismissing the case, the court must also consider the efficacy of lesser sanctions. If the court seeks to outright dismiss the case as a sanction, then the court does an *Ehrenhaus* analysis.[17]

---

[12] *Woodworker's Supply, Inc. v. Principal Mut. Life Ins.*, 170 F.3d 985 (10th Cir. 1999).

[13] *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992).

[14] Fed. R. Civ. P. 37(c)(1).

[15] *HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1206 (10th Cir. 2017).

[16] The factors are "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Woodworker's Supply*, 170 F.3d at 993.

[17] *See Ehrenhaus*, 965 F.3d at 920–21. Courts have applied, and the Tenth Circuit has condoned applying, the *Ehrenhaus* factors beyond dismissal sanctions to other dispositive sanctions (e.g., entering default judgement), and even to nondispositive sanctions. *See Villanueva Echon v. Sackett*, 809 F. App'x 498, 472 (10th Cir. 2020). But Plaintiff offers no case from the Tenth Circuit *requiring* application of the *Ehrenhaus* factors outside of dismissal sanctions. Its single cited case requiring an *Ehrenhaus* analysis is, in fact, addressing imposing dismissal as sanction. *Mobley v. McCormick*, 40 F.3d 337, 341 (10th Cir. 1994). And because it was not required, Judge

As a threshold issue, Judge Severson did not make an explicit finding that Defendants violated Rule 37(c)(1). Rule 37(c)(1) permits sanctions for a party's "fail[ure] to provide information . . . as required by Rule 26(a) or (e)." And Rule 26(e) requires a party to supplement a response to a request for production, if the party either (1) learns that the initial response was materially incomplete or incorrect or (2) the court orders supplementation.[18] In light of Defendants' truant supplementation—often weeks after the requests and the court's order—and in one case, the day after Plaintiff's expert's deposition, Judge Severson found that Defendants' "reluctance or failure to timely produce all of the requested invoices . . . was, at best a dilatory approach to discovery."[19] Judge Severson further explained that "[a]t worst, Defendants' actions constitute knowing misrepresentations and/or attempts to undermine the integrity of the judicial process."[20] Either act—dilatoriness or intentional misrepresentations—support a finding that Defendants violated their obligation to supplement under Rule 26(e), and thus, committed conduct sanctionable under Rule 37(c)(1). Having reviewed the record, this Court agrees that Defendants committed conduct sanctionable under Rule 37(c)(1).

Judge Severson did not err by forgoing an *Ehrenhaus* analysis. First, Plaintiff's (obviously) did not seek dismissal of the case as a sanction, so Judge Severson was not required to do an *Ehrenhaus* analysis on that ground. Second, because Judge Severson concluded that under the *Woodworker's* factors, Defendants' noncompliance was substantially justified or

---

Severson did not "fail[] to consider . . . the applicable standard," *In re Motor Fuel Temp. Sales Pracs. Litig.*, 707 F. Supp. 2d 1145, 48 (D. Kan. 2010), and the order was thus not contrary to law on that ground.

[18] Fed. R. Civ. P. 26(e)(1)(A)–(B).

[19] Doc. 96.

[20] *Id.*

harmless, she did not need to consider the efficacy of lesser sanctions—*Ehrenhaus*'s fifth factor. The order was not contrary to law on this ground.[21]

### C. Remedy to Cure Prejudice

Plaintiff next argues that Judge Severson misapplied the second *Woodworker's* factor—curability—and should have concluded that it supported sanctioning Defendants. That is so, Plaintiff argues, because the prejudice to it is incurable and Judge Severson's curative remedy was futile. As part of her *Woodworker's* analysis, Judge Severson found under *Woodworker's* factor (and no party here meaningfully objects) that Plaintiff suffered prejudice from Defendants' late production of the invoices. The prejudice comes, first, from the inability of Plaintiff's experts to incorporate the invoices into their expert reports or depositions, and second, from Plaintiff's inability to use the invoices in depositions of Defendants' employees. Thus, by the time Defendants produced the additional invoices, "it was too late for Plaintiff to use them."[22] But Judge Severson found that the second *Woodworker's* factor—curability—did not support sanctions because the prejudice could be cured.

Following Plaintiff's cue, Judge Severson crafted a remedy to cure that prejudice. Following the October 30 disclosure, Plaintiff asked Defendants for a second Rule 30(b)(6)[23] deposition of their corporate representative to inquire about the late disclosures.[24] In particular, Plaintff wanted to discuss "what the documents [were], where they came from, how they were

---

[21] Plaintiff apparently changed its mind on the proper standard for Rule 37(c)(1) because its opening brief for the motion before Judge Severson argued the appropriateness of sanctions under the *Ehrenhaus* factors *and* the *Woodworker's* factors.

[22] Doc. 98 at 2.

[23] Fed. R. Civ. P. 30(b)(6).

[24] Doc. 77-9 at 3–4.

relied on by the Banks to calculate the variable fee, and why they weren't produced earlier."[25] So Judge Severson, as a cure, granted Plaintiff's requested Rule 30(b)(6) deposition.

Now Plaintiff's argue that the second deposition will not cure any prejudice because it is still too late for Plaintiff's experts to use the invoices in their reports, which have already been written, or in the depositions, which have already occurred. Plaintiff notes that its request for a second Rule 30(b)(6) deposition was not to cure prejudice; it was to gather fodder for a sanctions motion.[26]

Judge Severson's finding that the prejudice to Plaintiff is curable was not based on clearly erroneous findings and is not contrary to law. She applied the correct standard for curability. She fashioned a cure that would allow Plaintiff to depose Defendants' corporate representative about the invoices and "how they were relied on by the Banks to calculate the variable fee"—one of the apparently critical issues surrounding the invoices.[27] Thus, Judge Severson's curative remedy permitted Plaintiff an opportunity to gather that critical information and obviated the need to hold further depositions of Defendants' employees on the issue of how the fee was calculated with the invoices. Plaintiff exaggerates the incurability of prejudice by suggesting that all five of its experts would have used the omitted invoices at their depositions and will need to supplement their reports. But, as Judge Severson found, Plaintiff did not (and in fact, still does not) explain how the experts would have relied on the invoices—if at all. At least two of the experts "had not been tasked by Plaintiff with independently reviewing available

---

[25] *Id.*

[26] Doc. 98 at 7.

[27] Doc. 65 ("The withheld invoices are critical to verifying Defendants' $0 variable fee calculation. Without these documents, Plaintiff's experts could not independently evaluate Defendants' methodology.")

third-party invoices."²⁸  And nothing prevents, except time and cost, Plaintiff's other experts from supplementing their reports with the new invoices (assuming that the reports even analyze the invoices in the first place).²⁹  That time and cost, however, are not insurmountable, and thus do not render supplementing expert reports an infeasible cure.  And in any event, those costs are not great enough to warrant Plaintiff's request for drastic dispositive sanctions against Defendants.  The Court finds that Judge Severson's curability analysis was neither contrary to law nor based on clearly erroneous findings.

### D. *Failure to Sanction*

Plaintiff finally argues that Judge Severson's failure to impose sanctions, after finding prejudice to Defendants, was contrary to law.  The Court has already concluded that Judge Severson's decision not to impose sanctions under Rules 26(g) or 37(c)(1) was not contrary to law.  Plaintiff argues as its last resort³⁰ that Judge Severson should have imposed sanctions under Rule 37(d), which permits sanctions against a party who, after receiving a Rule 34 request, "fails to serve its answers, objections, or written response."³¹  Plaintiff acknowledges that Defendants did not completely fail to respond; they instead say that Defendants' evasive responses should be treated as a failure.  Plaintiff seeks in essence to import from Rule 37(a)(4) the principle that "an

---

²⁸ Doc. 96 at 7.  Plaintiff suggests that the experts did not conduct their independent review because it would be pointless without all the existing invoices.  But that review's futility is belied by another of Plaintiff's experts, Chuck Rogers, who conducted his independent review, even without all existing invoices, and supplemented his calculations as Defendants produced new invoices.  *See* Doc. 105 at 2–3.

²⁹ In fact, the only expert that Plaintiff has demonstrated relied on the invoices in his analysis is Chuck Rogers, who Judge Severson recently ruled is not a Rule 26(a)(2)(B) witness and thus need not produce a report.  Doc. 106 at 19–20.

³⁰ Plaintiff's motion for review also asks for sanctions under Fed. R. Civ. P. 37(e), which Judge Severson rejected in her order.  But Plaintiff does not object to Judge Severson's order on the Rule 37(e) sanctions, so it has waived that ground for review.  *See* Fed. R. Civ. P. 72(a) ("A party may not assign as error a defect in the order not timely objected to.").

³¹ Fed. R. Civ. P. 37(d).

evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."

But Rule 37(d) addresses a party's total failure to respond, not its evasiveness. Rule 37(a)(4)'s "evasiveness is failure" rule only applies to subdivision (a),[32] and a similar rule is conspicuously absent from subdivision (d), supporting by negative implication that Rule 37(d) does not treat evasiveness as a failure to respond. Ample authority supports this conclusion.[33] Because Defendants did not fail completely to respond to Plaintiff's requests for production, Rule 37(d) is inapplicable. Judge Severson's order was not contrary to law on this ground.

For all these reasons, the Court denies Plaintiff's motion to review and overturn Judge Severson's February 3 order.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion to Review Magistrate Judge's Order Regarding Motion for Sanctions (Doc. 98) is **denied**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Leave to File Sur-Reply (Doc. 108) is **denied** as moot.

**IT IS SO ORDERED.**

Dated: March 26, 2025

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[32] The rule applies only "for purposes of this subdivision (a)." Fed. R. Civ. P. 37(a)(4).

[33] 8B Charles Alan Wright, Arthur Miller & Richard L. Marcus, *Federal Practice & Procedure*, § 2291 (3d. ed. 2010) ("This rule applies if the party requested to permit inspection fails to serve a written response to the request. If it serves a response, but fails to . . . permit the inspection itself a motion under Rule 37(a) to compel inspection is available, but Rule 37(d) is inapplicable."); 7 James W. Moore et al., *Moore's Federal Practice* § 37.91 (3d ed. 2024) (addressing counterarguments that Rule 37(d) permits sanctions for evasive responses); 1 Steven Gensler, *Federal Rules of Civil Procedure, Rules and Commentary*, Rule 37 note on 37(d) (2024 ed.) ("The prevailing view is that Rule 37(d) is limited to instances of total non-compliance in discovery."); Fed. R. Civ. P. 37 advisory committee's note to 1970 amendment (describing Rule 37(d) as "concerned" with "total non-compliance").