UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

METHODS RESEARCH, INC.

     Plaintiff,

vs.

OTTAWA BANCSHARES, INC., FIRST BANK
KANSAS, FIRST KANSAS BANK, LYON
COUNTY STATE BANK, and COMMERCIAL
BANK,

     Defendants.

Case No. 23-2136-JAR-BGS

MEMORANDUM & ORDER DENYING
MOTION TO COMPEL EXPERT COMMUNICATIONS

     NOW BEFORE THE COURT is Plaintiff's "Motion to Compel Expert Communications."

(Doc. 103.)  Therein, Plaintiff argues that Defendants improperly redacted communications exchanged

with their retained expert, Preston E. Herman (hereinafter "Herman") and withheld certain internal

email from Herman's office.  For the reasons set forth herein, Plaintiff's motion (Doc. 103) is

**DENIED**.

FACTUAL BACKGROUND

I.    **Nature of the Case.**

    This is a breach of contract case.  In September 2015, Plaintiff presented a proposal to

implement an IT Consolidation Project ("the project") for the four Defendant Banks that would

require Defendants to pay a "Fixed Fee" of $1,000,000, as well as a "Variable Fee" equal to 50% of any

revenue enhancements, process improvements, and expense reductions recommended by Plaintiff and

implemented by the Defendants (Doc. 1, at ¶ 22.)  The Fixed Fee was paid by Defendants, but no

Variable Fee was paid.

According to Plaintiff, "Defendants internally calculated [the] variable fee and represented [Plaintiff] was owed $0, despite internal Bank documents showing the [Defendants] realized an increase in revenues and a decrease in expenses directly attributable to implementing [Plaintiff's] recommendations." (Doc. 65, at 2 (citing Doc. 1, at ¶¶ 24-25; 34-35).)  Plaintiff contends that Defendants overstated their expenses and understated their savings in an effort to avoid owing any Variable Fee.  Both sides have prepared calculations of the Variable Fee owed, which vary substantially. On March 24, 2023, Plaintiff filed this lawsuit to recover the Variable Fee it alleges Defendants owe.

## II.    *Duces Tecum* Deposition Notice to Herman.

Herman was designated by Defendants as a retained expert in their supplemental Rule 26 disclosures, which were served on November 21, 2024.  (*See* Doc. 72-2, at 3; *see also generally* Doc. 72.) Plaintiff served a Notice of Videotaped Deposition Duces Tecum of Preston E. Herman on December 9, 2024, setting the deposition for December 19, 2024.  (Doc. 76.)

Listed in the *duces tecum* notice were ten categories of documents Plaintiff sought from the witness, including communications between him and defense counsel relating to compensation for the witness's study or testimony, identifying facts or data that retaining counsel provided and the witness considered in forming his opinions, or identifying "assumptions that retaining counsel provided and the witness relied on in forming his opinions."[1]  (*Id.*, at 3, Category 2.)  The deposition notice also requested documents consisting of communications between Herman "and any other individual regarding the facts of this case or the witness's opinions."  (*Id.*, at 3, Category 3.)

On December 18, 2024, the day before Herman's deposition, defense counsel served "Defendants' Objections and Responses to Plaintiff's Notice of Deposition Duces Tecum of Preston E. Herman, CPA, ABV, CFE."  (Doc. 103-3.)  Therein, Defendants objected that Category 2 "seeks

---

[1] The Court notes this category mirrors the language from Fed. R. Civ. P. 26(b)(4)(C), which enumerates non-protected communications between a party's attorney and retained witnesses.

information beyond the expert report and disclosure requirements of Rule 26(a)(2) and Rule 26(b)(4), including work product, draft reports, and communications between Defendants' attorneys and the expert witness that contain privileged/work product content not falling withing the limited exclusions enumerated in Rule 26(b)(4)." (Doc. 103-3, at 5-6 (citations omitted).)  Defendants objected that Category 3 is overbroad, unduly burdensome, and "seeks documents that are work product, attorney-client communications, and/or documents that are protected under Rule 26(b)(4), including draft reports and communications between Defendants' attorneys and the expert witness." (Doc. 103-3, at 6 (citing Fed. R. Civ. P. 26(b)(4) and 1991 Amendments.)  Contemporaneously, Defendants produced documents pursuant to the deposition notice.  (Doc. 103-2.)  Plaintiff asserts, however, that the communications produced were "heavily redacted."[2]  (Doc. 103, at 2.)

During the deposition, while instructing the expert not to answer a question from Plaintiff's counsel, defense counsel objected based upon "the privilege that is included in Rule 26(B)(4) which is communications with retained counsel, with retained experts." (Doc. 103-1, at 5:17-7:3.)[3]  At the end of Herman's deposition, the parties engaged in a meet & confer session regarding these redactions and the production of Herman's file.  (*Id.*, at 273:19-281:12.)  Defense counsel indicated their position that documents and communications requested from Herman were protected from disclosure by the attorney-client privilege and attorney-expert privilege.[4]  (*Id.* at 279:19-21.)  Defense counsel did, however, state their willingness to provide the documents to the Court for *in camera* review.  (*Id.* at 276:16-21.)

---

[2] As discussed below, unredacted copies of the documents, in which redacted portions have been highlighted, were produced to the Court for an *in camera* review.

[3] Plaintiff's motion, in passing, raises concerns with instances during Herman's deposition in which defense counsel instructed him not to answer several questions based on the work product doctrine or the argument that Plaintiff seeks discovery beyond that contemplated by Rule 26(b)(4)(C).  (Doc. 103, at 1 (citing Doc. 103-1, at 5:17-6:13; 6:14-19; 7:23-8:12; 22:18-26:9; 44:2-45:2; 45:16-23; 45:24-47:22; 48:20-50:18)).  In part, Plaintiff's motion asks this Court to intervene to "obtain … [this] testimony previously requested." (*Id.*)  Plaintiff has, however, failed to provide actual analysis or discussion of the deposition objections.  (*See generally*, *id.*)  The Court will, therefore, not address these deposition objections herein.

[4] The Court notes, however, that Defendants' brief in opposition, much like Defendants' written objections to the deposition notice, focuses on the work product doctrine, rather than privilege-based objections.

On January 21, 2025, the parties engaged in a pre-motion discovery telephone conference with

the Court regarding this dispute.  A week later, on January 28, 2025, defense counsel produced copies

of Herman's invoices and an additional email chain that had not been previously produced.  (Doc. 103-

4.)  On January 30, the parties held a further meet & confer session regarding these issues.  Thereafter,

the Court ordered Defendants to produce the documents for *in camera* review by February 10, 2025,

with any related motion to be filed by March 7, 2025.  (Doc. 97.)  Defendants timely submitted the

unredacted documents to the Court and Plaintiff's motion (Doc. 103) was timely filed.

## ANALYSIS

**I.      Legal Standards.**

> **A.      Scope of Discovery.[5]**

The scope of discovery sought through a *duces tecum* deposition notice is the same as party

discovery permitted by Fed. R. Civ. P. 26.  *See In re Syngenta AG MIR 162 Corn Litigation*, MDL No.

2591, No. 14-md-2591-JWL, 2017 WL 1106257, at *16 (D. Kan. Mar. 24, 2017) (in the context of a

*duces tecum* deposition notice and subpoena of a party's expert) (citing *Schneider v. CitiMortgage, Inc.*, No.

13-4094, 2014 WL 4749181, at *2 (D. Kan. Sept. 24, 2014)).  "In other words, the relevancy standards

set forth in Rule 26 define the permissible scope … ."  *In re Subpoena of Justin Works*, No. 18-2637-

DDC-TJJ, 2018 WL 6725385, *2 (D. Kan. Dec. 21, 2018) (in the context of a deposition subpoena of a

non-retained expert).  "Relevancy is to be 'construed broadly to encompass any matter that bears on,

or that reasonably could lead to other matter that could bear on' any party's claim or defense."  *Id.*

(quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

---

[5] A significant portion of Plaintiff's motion addresses a technical issue as to whether Plaintiff should have sought the documents at issue through Rule 26 discovery or through a Rule 45 subpoena. (See Doc. 103 at 5-6, 8-9.)  Based on Defendants' responsive brief, however, it appears that Defendants do not intend to contest Plaintiff on this issue: "[W]hile Defendants continue to believe MRI's requests were odd and, at best, procedurally ambiguous, the scope of the current dispute is essentially limited to the documents in the Court's possession for in camera review." (Doc. 107, at 9.)  The Court, therefore, will not belabor this issue herein.

Pursuant to Federal Rule of Civil Procedure 37(a)(3)(B), a party seeking discovery may move for an order compelling an answer, designation, production, or inspection in response to the discovery. This applies to documents sought via a *duces tecum* deposition notice. *See generally Hennessey v. University of Kansas Hosp. Authority*, No. 21-2231-EFM-TJJ, 2024 WL 521711 (D. Kan. Feb. 9, 2024) (applying Fed. R. Civ. P. 37(a)(3) (B) to a Rule 30(b)(6) *duces tecum* deposition notice). "An evasive or incomplete disclosure, answer, or response" to a deposition notice "is treated as a failure to disclose, answer, or respond." *Id.*, at *2 (citing Fed. R. Civ. P. 37(a)(4)). "The party filing the motion to compel need only file the motion and draw the court's attention to the relief sought." *Id.* (citing *Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL, 2005 WL 731070, at *4 (D. Kan. Mar. 30, 2005)). Thereafter, "the burden is on the nonmoving party to support its objections with specificity and, where appropriate, with reference to affidavits and other evidence." *Id.* (citing *No Spill, LLC v. Scepter Canada, Inc.*, No. 18-2681-HLT-KGG, 2021 WL 5906042, at *3 (D. Kan. Dec. 14, 2021)).

## B.     Defendants' Objections.

Based on the Court's *in camera* review, the documents at issue fall into one of two categories:  1) email communications between Herman/staff and retaining counsel/staff and 2) email communications between Herman/staff, retaining counsel/staff, and agents/representatives of Defendants. The senders/recipients of the various communications will impact the Court's application of work product protections to the communications, as discussed below.

As discussed above, Defendants objected that Categories 2 and 3 of Herman's *duces tecum* subpoena notice sought documents that were otherwise protected from discovery by the work product doctrine. As to Category 2, which implicates communications between Herman and counsel, Defendants object that the withheld information contains "privileged/work product content not falling within the limited exclusions enumerated in Rule 26(b)(4)." (Doc. 103-3, at 5-6.) As to Category No. 3, which implicates communications between Herman/staff, retaining counsel/staff, and Defendant's

agents or representatives, Defendants object that Plaintiff seeks "documents that are work product, attorney-client communications, and/or documents that are protected under Rule 26(b)(4), including draft reports and communications between Defendants' attorneys and the expert witness." (Doc. 103-3, at 6.) Without waiving these objections, Defendants produced the redacted email correspondence at issue. Per the suggestion of Defendants, unredacted copies of those documents have been submitted to the Court for *in camera* review.

As also discussed above, the Court notes that during the meet & confer session regarding these redactions (Doc. 103-1, at 273:19-281:12), Defense counsel indicated their position that documents and communications requested from Herman were protected from disclosure by the attorney-client privilege and attorney-expert privilege. (*Id.* at 279:19-21.) Defendants' brief in opposition, much like Defendants' written objections to the deposition notice, however, focuses on the work product doctrine, rather than privilege-based objections: "Defendants' primary concern is protecting communications and information covered by the work product doctrine, most importantly communications that relate to mental impressions or opinions of counsel or the client." (Doc. 107, at 1.) As such, the Court will not engage in an attorney-client privilege analysis. *Sonnino v. University of Kansas Hosp. Authority*, 221 F.R.D. 661, 670-71 (D. Kan. 2004) (stating that a party that does not support an objection to a discovery request in response to a motion to compel has abandoned that objection); *Cardenas v. Dorel Juvenile Group, Inc.*, 232 F.R.D. 377, 380 (D. Kan. 2005) (holding that "[o]bjections initially raised but not relied upon in response to the motion to compel will be deemed abandoned"). Although many of the email communications reviewed by the Court could arguably implicate attorney-client privilege issues, Defendants have abandoned this argument. The Court will instead focus on potential protections under Fed. R. Civ. P. 26(b)(3), the work product doctrine, and Fed. R. Civ. P. 26(b)(4), which protects certain expert-attorney communications.

C.    **Legal Standard.**

6

The work-product doctrine is memorialized by Fed. R. Civ. P. 26(b)(3), which provides that a party ordinarily "may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." To establish that certain documents should be afforded protection under the work product doctrine,

> the party seeking to invoke work product immunity must show that (1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party. The party invoking work product immunity for a document has the burden to establish all the elements of the immunity, and a mere allegation that the work product privilege applies is insufficient to prove applicability.

*United States Equal Employment Oppty. Comm'n v. Chipotle Servs., LLC*, No. 23-2439-KHV-BGS, 2024 WL 3677408, *9 (D. Kan. Aug. 1, 2024) (quoting *McNabb v. City of Overland Park*, No. 12-2331-CM-TJJ, 2014 WL 1152958, at *8 (D. Kan. March 21, 2014) (citations omitted)) and *AKH Co., Inc. v. Universal Underwriters Ins. Co.*, 300 F.R.D. 684, 688 (D. Kan. 2014).

Federal Rule of Civil Procedure 26(b)(4) governs discovery specifically regarding trial preparation by experts. Subsection (b)(4)(C) of the Rule governs "Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses." This subsection states, in relevant part, that

> Rules 26(b)(3)(A) and (B) protect **communications between the party's attorney and any witness required to provide a report** under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:
>
>> (i) relate to compensation for the expert's study or testimony;
>>
>> (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or
>>
>> (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

7

Fed. R. Civ. P. 26(b)(4)(C) (emphasis added).  The advisory committee's note to the Rule continues with

the following:

> Rules 26(b)(4)(B) and (C) do not impede discovery about the opinions to be offered by the expert or the development, foundation, or basis of those opinions.  For example, the expert's testing of material involved in litigation, and notes of any such testing, would not be exempted from discovery by this rule.  Similarly, **inquiry about communications the expert had with anyone other than the party's counsel about the opinions expressed is unaffected by the rule**.

Fed. R. Civ. P. 26(b)(4) advisory committee's note (2010) (emphasis added).

In essence, Rule 26(b)(4)(C) creates a specific, targeted protection for expert-attorney

communications while Rule 26(b)(3) provides a broader work product protection. The advisory

committee notes to the 2010 amendments acknowledge the interplay stating that the 26(b)(4)(C)

amendment "does not exclude protection under other doctrines, such as privilege or independent

development of the work-product doctrine." *See* Fed. R. Civ. P. 26 advisory committee note to 2010

amendment.  Because the standard under 26(b)(4)(C) is limited to communication between counsel and

a retained expert witness, it will only be applied to communications between Herman and retaining

counsel.

## II.     Application of Legal Standard to Facts Presented.

### A.     Communications between Expert, Counsel, and Defendants' Agents/Representatives (Deposition Notice Category 3).

The first grouping of communications the Court will address are those emails in which

Herman/his staff, retaining counsel, and Defendants' representatives are included as senders and/or

recipients.  Plaintiff argues that case law from this District establishes that "communications exchanged

between Mr. Herman and agents and representatives of the Defendant Banks (such as Angie Eilrich

and Rebecca Loy, neither of whom are attorneys) are not protected from disclosure by any

privilege." (Doc. 103, at 6.)  Plaintiff continues that despite the clear legal authority, "Defendants have

improperly redacted numerous emails exchanged between [their expert] Mr. Herman and Defendants'

employees and representatives." (*Id.*) Plaintiff asserts that Defendants cannot create protection for these communications "by simply copying defense counsel on the emails exchanged between Mr. Herman (or other employees within his office) and Defendants' agents … ." (*Id.*) Plaintiff thus seeks an Order compelling production of unredacted versions of these emails. (*Id.*)

Plaintiff cites the District of Kansas decision in *Amco Ins. Co. v. Mark's Custom Signs, Inc.*, No. 12-2065-CM-KGG, 2013 WL 1633276, at *3 (D. Kan. Apr. 16, 2013), to argue that only communications between an expert and counsel are protected by the Rule 26(b)(3) work product doctrine, while communications between an expert and the disclosing party's agents are not. (*See* Doc. 103, at 3-4.) Plaintiff relies on the following passage from that decision: "The Court does not agree that such protection extends . . . to communications to Plaintiff's agents." (*Id.*, at 3-4 (quoting *Amco*, 2013 WL 1633276, at *3 (D. Kan. Apr. 16, 2013).) According to Plaintiff, the *Amco* court "reasoned that because Rule 26(b)(4)(C) only protected communications between the expert and counsel, notes drafted by plaintiff's non-attorney agents regarding communications with the testifying expert were not protected." *Id.*

Defendants distinguish the *Amco* decision, noting that the case "dealt with insurance subrogation and the dispute addressed in that opinion involved requests for preliminary investigative findings by a party's expert (i.e., fact work product)." (Doc. 107, at 5.) Defendants continue that when taken within the factual context presented in *Amco*, "the case stands for the unremarkable proposition that facts known to an expert and shared with a party's non-attorney agents can be, under the right circumstances, discoverable." (*Id.*) The Court agrees with Defendants and further distinguishes *Amco* because the disclosing party in that case had yet to even determine whether the experts at issue would be disclosed as retained experts in the case. 2013 WL 1633276, at *2.[6]

---

[6] Plaintiff also relies on the *Resolution Tr. Corp. v. Dabney* decision, which holds that "[b]ecause the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within work product." 73 F.3d 262, 266 (10th Cir. 1995). Defendants correctly assert that the *Resolution Trust* decision is distinguishable from the issues before the Court because that decision

9

As mentioned above, Defendants further contend that their "primary concern is protecting communications and information covered by the work product doctrine, most importantly communications that relate to mental impressions or opinions of counsel or the client." (Doc. 107, at 1.) Upon *in camera* review of the emails at issue, the Court has determined that the communications between Herman/staff, retaining counsel, and Defendants' agents/representatives clearly include their mental impressions, conclusions, opinions, and/or legal theories. According to Defendants, "[e]ven where documents containing work product are disclosed to a third party, courts '**must** protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.'" (Doc. 107, at 1 (citing Fed. R. Civ P. 26(b)(3)(B)[7] (emphasis supplied by Defendants) (also citing *United States v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980) (holding that unlike attorney-client privilege, voluntary disclosure of work product to a third party does not in itself waive the work product protection))). The Court agrees.

Defendants continue that "disclosure of work product to an expert, like it would to any other friendly third party, does not waive the protection." (Doc. 107, at 5 (citing *All W. Pet Supply Co. v. Hill's Pet Prods. Div., Colgate-Palmolive Co.*, 152 F.R.D. 634, 639 (D. Kan. 1993) ("The defendants' burden under Rule 26(b)(3) cannot be avoided simply because the attorney's work product document in question was transmitted to his client's expert witness … . To hold otherwise would substantially diminish the protection Rule 26(b)(3) affords to the disclosure of attorney work product.") (other citations omitted)).) Defendants also assert that "the opinion work product of other client representatives, like Ms. Eilrich, opining with impressions, conclusions, or theories related to the litigation, are protected as 'opinion' work product all the same." (*Id.*, at 6 (citing Fed. R. Civ. P.

---

dealt with "whether the work product doctrine 'preclude[s] inquiry into the mere fact of an investigation.'" (Doc. 107, at n.2 (citing Resolution Trust, 73 F.3d at 266).) That is clearly not at issue herein.

[7] In their responsive brief, Defendants' mistakenly cite to Fed. R. Civ. P. 26(b)(4)(B) when this language is quoted verbatim from Fed. R. Civ. P. 26(b)(3)(B).

26(b)(3)(B) (protecting the "the mental impressions, conclusions, opinions, or legal theories of a party's

attorney or **other representative concerning the litigation**") (emphasis supplied by Court).)

According to Defendants, "no one would dispute the work product doctrine can apply to a

client's internal communications that are made in anticipation or in consideration of litigation

regardless of whether any attorney is part of those communications or has even been retained." (*Id.*)

The Court agrees. "'[O]nly disclosures that are 'inconsistent with the adversary system' are deemed to

waive work-product protection.'" *Pipeline Prods., Inc. v. Madison Cos., LLC*, No. 15-4890-KHV-ADM,

2019 WL 2106111, at *3 (D. Kan. May 14, 2016) (quoting 2 Edna Selan Epstein, The Attorney-Client

Privilege and the Work-Product Doctrine 1286 (6th ed. 2017)).

After conducting an in camera review of this category of email communications, the Court

finds they are protected work product pursuant to Fed. R. Civ. P. 26(b)(3). The redacted portions of

the emails contain "mental impressions, conclusions, opinions, and legal theories" of Defendants, its

agents/representatives, and/or its expert witnesses (in this instance, Herman) and are, like those of

Defendants' attorneys, protected from disclosure by the work product doctrine. This includes the

mental impressions, conclusions, opinions, and theories that were shared between Herman, defense

counsel, and Defendants' agents/representatives.[8] This portion of Plaintiff's motion is **DENIED**.

> **B.    Communications between Expert and Defense Counsel (Deposition Notice Category 2).**

Having reviewed unredacted copies of the emails between Herman/his staff and retaining

counsel, the Court finds that the information redacted does not relate to compensation for the expert's

study or testimony, nor does it constitute "assumptions" provided by defense counsel that were

considered by Herman in forming his opinions, as would be discoverable under Fed. R. Civ. P.

26(b)(4)(C)(i), (iii).

---

[8] Further, the compilation or selection of facts can, under certain circumstances, constitute mental impressions equating to work product. *Raytheon Aircraft Co. v. U.S. Army Corps of Engineers*, 183 F.Supp.2d 1280, 1290 (D. Kan. 2001) (citation omitted). This issue will be analyzed more fully, *infra.*

The only communications at issue that arguably "identify facts or data that the party's attorney provided" and Herman potentially "considered in forming [his] opinions," Fed. R. Civ. P. 26(b)(4)(C)(ii), are two email chains from defense counsel highlighting the portions of deposition transcripts of two witnesses that counsel finds to be of particular relevance. For the reasons set forth herein, the Court finds the emails at issue do not fall within this exception and constitute work product implicating counsel's mental impressions, conclusions, opinions, and/or legal theories.

This District has acknowledged that "[i]n certain situations, the selection and compilation of documents may warrant work-product protection." *Raytheon Aircraft Co.*, 183 F.Supp.2d at 1290 (citing *In re Allen*, 106 F.3d 582, 608 (4th Cir. 1997) and *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985) ("We believe that the selection and compilation of documents in this case in preparation for pretrial discovery falls within the highly-protected category of opinion work product."), *cert. denied*, 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985)). *See also Pflughoeft v. Kansas & Oklahoma RR, LLC*, No. 22-1177-TC-RES, 2023 WL 5672202, at *10 (D. Kan. Sept. 1, 2023) (acknowledging that "when a Rule 30(b)(6) notice is 'so broad that it encompasses the organizational structure and contents of the lawyer's trial notebook and his or her opening and closing statements' there is a potential to disclose privileged information or attorney work product." (citing *Atwood v. Union Pac. R.R. Co.*, No. 8:21CV394, 2022 WL 17585893, at *9 (D. Neb. Dec. 12, 2022)). This District has also held that "'the selection and compilation of documents by counsel falls within the highly-protected category of opinion work product.'" *Snowden By and Through Victor v. Connaught Labs., Inc.*, 137. F.R.D. 325, 332 (quoting *Taylor v. Wyeth Labs, et al.*, No. 84-1474, Slip Op. at 2 (D. Kan. Feb. 10, 1987) (Sam A. Crow) (citing in part *Sporck*, 759 F.2d, at 316)). "'Opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances.'" *Id.* (quoting *Taylor, supra*).

*Allen* and its progeny typically protect the thought process of the attorney in selecting or compiling a subset of records out of a larger set of documents that were otherwise discoverable. 106

F.3d at 608.  The *Allen* court held that when an attorney selects and arranges otherwise discoverable

records in anticipation of litigation, "[t]his choice and arrangement constitutes opinion work product

because [the attorney's] selection and compilation of these particular documents reveals her thought

processes and theories regarding [the] litigation."  *Id.* (citing *Shelton v. American Motors Corp.*, 805 F.2d

1323, 1329 (8th Cir. 1986) ("In cases that involve reams of documents and extensive document

discovery, the selection and compilation of documents is often more crucial than legal research.... We

believe [counsel's] selective review of [her clients'] numerous documents was based on her professional

judgment of the issues and defenses involved in this case.")); *Sporck*, 759 F.2d at 316 ("We believe that

the selection and compilation of documents in this case in preparation for pretrial discovery falls within

the highly-protected category of opinion work product."), *cert. denied*, 474 U.S. 903, 106 S.Ct. 232, 88

L.Ed.2d 230 (1985); *James Julian v. Raytheon Co.*, 93 F.R.D. 138, 144 (D. Del. 1982) ("In selecting and

ordering a few documents out of thousands counsel could not help but reveal important aspects of his

understanding of the case.")).

On the other hand, Courts in this District have held that "[t]he selecting and grouping of

information does not transform discoverable documents into work product."  *Audiotext Comm.*

*Network, Inc. v. US Telecom, Inc.*, 164 F.R.D. 250 (D. Kan. 1996) (citing *Bohannon v. Honda Motor Co. Ltd.*,

127 F.R.D. 536, 539–40 (D.Kan.1989).  The Court finds the *Audiotext* decision to be distinguishable

because the documents at issue therein consisted of a notebook of documents compiled by counsel for

use by a deponent to prepare for his deposition and refresh his recollection, which is not the situation

before the Court.  164 F.R.D. at 252-53.  As discussed below, the Court is currently not determining

whether an attorney's grouping of discoverable documents constitutes work product.  Rather, the

Court is determining whether an attorney's mental process in selecting – as enlightening or germane –

certain passages from a deposition transcript should constitute the attorney's protected opinion work

product.

The Court finds the analysis from *Allen*, which was cited with approval by this District in *Raytheon Aircraft Co.*, 183 F.Supp.2d at 1290, to be particularly applicable to the situation presented herein. As mentioned above, the only communications at issue that arguably "identify facts or data that the party's attorney provided" and that Herman potentially "relied on," Fed. R. Civ. P. 26(b)(4)(C)(ii), are two email chains from defense counsel highlighting the portions of deposition transcripts of two witnesses that counsel finds to be of particular relevance. These are depositions attended by Plaintiff's counsel. The transcripts are available to all counsel and parties in this case and are in no way protected, nor should they be protected. By applying work product protection to email such as this, no <u>facts</u> are being withheld from Plaintiff or its counsel.[9] What <u>is</u> being protected, however, is the thought process, opinions, and mental impressions of defense counsel in determining the certain specific lines from the deposition transcript that counsel finds to be enlightening.

"The selection and compilation of otherwise unprivileged documents by counsel for litigation purposes should give rise to the work product immunity only where there 'is a real, rather than speculative, concern' that the thought processes of the compiling lawyer will be exposed." *Wollam v. Wright Medical Group, Inc.*, 10-3104-DME-BNB, 2011 WL 4375016 at *2 (D. Col. Sept. 20, 2011) (citing *Gould Inc. v. Mitsui Mining & Smelting Co., Ltd.*, 825 F.2d 676, 680 (2ⁿᵈ Cir. 1987)). Defense counsel's selection of a limited percentage of passages from entire deposition transcripts "is sufficiently small" that production of these emails would clearly "reveal … counsel's mental processes, impressions, and opinions" in determining that these were the important or germane portions of the deposition testimony. *Id.* As such, the Court finds that these emails are protected by the work product doctrine and will not order production of the same. This portion of Plaintiff's motion is **DENIED**.

      **D.**     **Internal Email Between Herman and Staff.**

---

[9] As such, Plaintiff cannot show "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii).

Finally, Plaintiff is concerned about the representation that Herman has no responsive documents consisting of internal communications with his staff or colleagues. (Doc. 103, at 7.) Plaintiff asserts that billing records from Herman's office indicate that "no less than six different people worked together to form Mr. Herman's opinions in this case." (*Id.* (citing Doc. 103-5).) According to Plaintiff, "[i]t appears as though no emails have been produced by Mr. Herman that defense counsel was not also included on" and Plaintiff's counsel finds it "highly unlikely that the six people within [his] office working together for months to form his opinions did not exchange any emails or written communications about their work." (*Id.*) Plaintiff thus requests an Order compelling Herman to produce such documents.

Herman testified that other than speaking to defense counsel and having his partner "pull[ed] together" their engagement letter, he made no effort to compile documents responsive to his deposition notice nor did he provide any other documents. (Doc. 110-1, at 36:10-37:3.) He testified that he did not attempt to review or find any responsive email. (*Id.*, at 63:2-5.) Rather, it is Herman's belief that all responsive documents sent to Plaintiff's counsel, other than the engagement letter, were compiled by defense counsel. (*Id.* at 37:8-12).

Defendants assert, however, that they verified with Herman, following the telephone conference with the Court, that he has no responsive "internal documented communications." (Doc. 107, at 7.) Thus, Defendants argue this is a "hypothetical dispute." (*Id.*) Plaintiff correctly points out that such "representations" have, however, "only been made to defense counsel." (Doc. 110, at 5 (citing Doc. 107, at 7).) Thus, the issue boils down to Plaintiff not believing Herman and/or defense counsel.

Defendants are correct that Plaintiff's "skepticism … is not sufficient evidence to call into question the veracity of Mr. Herman's representations." (Doc. 107, at 7.) "[W]hen a party responding to discovery requests states that it has fully responded, the court will not compel further responses

15

unless the moving party has presented information that calls into question the veracity of the responding party's representation." *F.D.I.C. v. McCaffree*, 289 F.R.D. 331, 338 (D. Kan. 2012).  *See also Manning v. General Motors*, 247 F.R.D. 646, 652 (D. Kan. 2007); *Sonnino v. University of Kansas Hosp. Auth.*, 220 F.R.D. 633, 640 (D. Kan. 2004); *Super Film of Am., Inc. v. UCB Films, Inc.*, 219 F.R.D. 649, 651 (D. Kan. 2004); *Cash Today, LLC v. MTE LLC*, No. 21-2360-EFM-RES, 2023 WL 2498922, at *7 (D. Kan. Mar. 14, 2023).  Plaintiff has no such "information" calling Defendants' representations into question; rather, Plaintiff relies solely on its hunch that other documents should exist because numerous people in Herman's office were involved.  This hunch does not suffice.  Further, Defendants "cannot be ordered to produce documents that do not exist." *Nyanjom v. Hawker Beechcraft, Inc.*, 12-1461-JAR-KGG, 2014 WL 667885, *4 (D. Kan. Feb. 20, 2014); *Nkemakolam v. St. John's Military School*, No. 12-2132-JWL-KGG, 2013 WL 5551696, *2 (D. Kan. Oct. 7, 2013) (citations omitted).

Defendants assert that if Plaintiff had questions about Herman's "internal communication practices with his staff, or wanted to probe [his] statements that no responsive communications existed," Plaintiff could have done so during his underlying deposition.  (Doc. 107, at 8.)  The Court agrees.  Defendants contend that Plaintiff's counsel made related inquiries, "but failed to specifically ask him whether such communications exist or to explain why no such responsive communications exist." (*Id.* (citing Doc. 107-1, at 41:17-24 (Herman conforming he did not exchange "any text messages with anyone regarding your work in this case"), 57:3-5 and 66:11-19 (Herman confirming he had no notes related to this case).)  Defendants are correct that "[t]here are many ways Mr. Herman could have shared thoughts and ideas with colleagues that would not create the type of documentation" sought by Plaintiff.  (*Id.*)  This portion of Plaintiff's motion is **DENIED**.

## CONCLUSION

For the reasons set forth herein, the Court finds that the redacted portions of the documents sought by Plaintiff are protected by the work product doctrine as reflected in Fed. R. Civ. P.

26(b)(3)(B) and (4)(C).  As such, the Court will not order their production.  Further, the Court finds no basis to question the veracity of Defendants' assertion that additional documents sought by Plaintiff from Herman do not exist.  Plaintiff's motion is, therefore, **DENIED**.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Compel (Doc. 103) is **DENIED**.

IT IS SO ORDERED.

Dated April 30, 2025, at Wichita, Kansas.

/s/BROOKS G. SEVERSON
Brooks G. Severson
U.S. Magistrate Judge