IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| METHODS RESEARCH, INC., | |
| Plaintiff, | |
| v. | Case No. 23-2136-JAR-BGS |
| OTTAWA BANCSHARES, et al., | |
| Defendants. | |

**MEMORANDUM AND ORDER**

Plaintiff Methods Research, Inc. ("MRI") sued Defendants Ottawa Bancshares, Inc., First Bank Kansas, First Kansas Bank, Lyon County State Bank, and Commercial Bank for failing to pay a fee owed to it under a services contract. Before the Court is Defendants' Objection to and Motion for Review of Magistrate Judge's Order Regarding Motion to Strike Limited Opinions of Chuck Rogers for Failing to Provide Rule 26(a)(2)(B) Report (Doc. 114).[1] The motion is fully briefed, and the Court is prepared to rule. As described more fully below, the motion is denied.

**I. Background**

Plaintiff says that Defendants owe it money; Defendants deny that. Several years ago, Defendants hired Plaintiff as an IT consultant, and they agreed that in exchange for those services, Defendants would pay two fees: (1) a flat fee of $1,000,000 and (2) a variable fee, calculated as 50% of the savings (i.e., the combination of cost reductions and revenue enhancements) attributable to Plaintiff's recommendations. Defendants paid the flat fee but have not paid the variable fee because, they say, there is nothing to pay: Defendants calculate the fee

---

[1] Plaintiff seeks leave to file a surreply (Doc. 122). The Court finds that motion moot in light of this Memorandum and Order.

at $0.  The parties must use Defendants' invoices to ascertain the amount of Defendants' savings, which in turn is used to calculate the variable-fee amount.

Charles Rogers helped Plaintiff calculate the variable fee.  Starting in 2015, he developed the "methodology for calculating the variable fee," and he consulted with Plaintiff "on the underlying project and its implementation."[2]  To help with that task, in 2018 Rogers started an Excel spreadsheet that used information from Defendants to calculate the savings to Defendants, and then based on those savings, calculate the variable fee amount.[3]  Rogers sent that spreadsheet—which focused on the savings to First Bank Kansas only—to Defendants in 2021.  But the spreadsheet was incomplete because the underlying data was incomplete: Rogers explained that the spreadsheet in 2021 provided "a fairly solid calculation based on the data I have, which for this bank was not complete, but at that point as complete as I could get from them."[4]  So whenever he received additional data, he "would apply it to the spreadsheet and update the numbers."[5]

Plaintiff designated Rogers a nonretained expert in September 2024.[6]  Because Plaintiff designated him a nonretained expert, he did not provide the report required by retained experts.  As part of its expert disclosures, however, Plaintiff sent the spreadsheet to Defendants.  By now, the spreadsheet included new information: Rogers had updated the spreadsheet in August 2024—after this suit commenced—with new information produced in discovery by Defendants.[7]

---

[2] Doc. 106 at 2.

[3] *Id.* at 4–5.

[4] Doc. 88-2, Rogers First Dep. 98:10–14.

[5] *Id.* at 83:11–13.

[6] Before this, Defendants had already deposed Rogers once as a fact witness.  *See* Doc. 39.

[7] Doc. 106 at 14 ("It is uncontested that the calculations contained in the spreadsheet were based on information supplied by Defendants.").

Rogers explained that he "did some updates at the end of August . . . and then a final update in the next tab after that."[8] In addition to that disclosure, Plaintiff also noted the scope of Rogers' expert testimony. Rogers would testify about Defendants' erroneous methodology for calculating the variable fee; Plaintiff's correct methodology for calculating the fee; Rogers' own calculation of the variable fee; and Rogers' view of industry practices on calculating the fee.[9]

Defendants moved for Magistrate Judge Severson to strike portions of Rogers' expert testimony. Though conceding that Rogers could serve as a fact witness and offer opinions based on facts he knew in his capacity as a fact witness, Defendants argued that he could not opine based on facts known to him only after the litigation began—like the data supporting the August 2024 update to the spreadsheet. To do so, Defendants argued, would render Rogers a retained witness subject to Rule 26(a)(2)(B)'s report requirement. And because Rogers had not submitted a report, the Court should strike Rogers' testimony to the extent it was "based on new facts or data he . . . received after his role as a percipient witness ended and litigation had begun."[10]

Magistrate Judge Severson denied that motion in a March 13, 2025 Order. She found that Rogers was not a witness "retained or specially employed to provide expert testimony in the case."[11] In reaching that conclusion, she explained that "the determinative issue is the scope of the proposed testimony,"[12] and she eschewed Defendants' myopic focus on the timing of Rogers' opinions—that is, whether Rogers' opinions relied on information obtained before or after litigation commenced and whether the opinion was formed before or after litigation commenced.

---

[8] Doc. 88-5, Rogers Second Dep. 81:17–21.

[9] Doc. 84-3 at 3–4.

[10] Doc. 84 at 2.

[11] Fed. R. Civ. P. 26(a)(2)(B).

[12] Doc. 106 at 12 (internal quotation marks omitted) (quoting *Full Faith Church of Love W., Inc. v. Hoover Treated Wood Prods., Inc.*, No. 01-2597, 2003 WL 169015, at *1–2 (D. Kan. Jan. 23, 2003)).

Instead, she explained that the dispositive question "is not *when* the opinion in question was formed, but rather 'the scope of the proposed testimony,'"[13] and whether the testimony would "'go beyond the [Plaintiff's] prior course of business dealings' with Rogers."[14] Judge Severson concluded that Rogers' opinions would be formed as part of his involvement in the "underlying consulting and implementation work at issue."[15] Plaintiff therefore did not retain him to provide expert testimony in the case.

## II. Standard

Fed. R. Civ. P. 72 allows a party to provide specific, written objections to a magistrate judge's order. The applicable standard of review depends on whether the magistrate judge's order relates to a dispositive or nondispositive issue. A nondispositive decision is reviewed under a clearly-erroneous or contrary-to-law standard, and a dispositive order is reviewed de novo.[16] The parties do not dispute that Judge Severson's March 13 Order should be considered nondispositive under Rule 72.

Under the more deferential standard that applies to this Court's review of a nondispositive order, the Court must affirm factual determinations "unless the entire evidence leaves it 'with the definite and firm conviction that a mistake has been committed.'"[17] As to legal matters,

> the Court conducts an independent review and determines whether the magistrate judge['s] ruling is contrary to law. Under this standard, the Court conducts a plenary review and may set aside the magistrate judge['s] decision if it applied an incorrect legal

---

[13] Doc. 106 at 18 (quoting *Full Faith Church*, 2003 WL 169015, at *1–2).

[14] *Id.* at 16 (quoting *Chambers v. Fike*, No. 13-1410, 2014 WL 3565481, at *4 (D. Kan. July 18, 2014)).

[15] Doc. 106 at 18 (internal quotation marks omitted) (quoting Defendants' brief).

[16] Fed. R. Civ. P. 72.

[17] *In re Motor Fuel Temp. Sales Pracs. Litig.*, 707 F. Supp. 2d 1145, 1147–48 (D. Kan. 2010) (quoting *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988)).

>standard or failed to consider an element of the applicable standard.[18]

The party seeking modification of the magistrate judge's order bears the burden to show that the order is clearly erroneous or contrary to law.[19] That is a heavy burden: "[t]he Court must have 'a definite and firm conviction that a mistake has been committed.'"[20] So a party does not carry that burden simply by registering disagreement with the magistrate judge's order. That is so because "permitting litigants regularly to impose their dissatisfaction with the magistrate judge's decisions on the district judge would create an undue risk of wasteful activity that could frustrate the purposes" of the magistrate-judge system.[21]

### III. Discussion

Defendants ask this Court to set aside Judge Severson's March 13, 2025 Order because she failed to apply the correct legal standard.[22] Defendants argue that Judge Severson identified the applicable legal standard—that a witness is a retained expert if his opinion goes beyond facts he knew from his pre-litigation relationship with the Plaintiff—but then failed to apply that standard. But Defendants' argument misses the mark. Judge Severson did identify that legal standard. But then she concluded that it was not applicable through a familiar mode of legal reasoning: she distinguished that rule from the situation here.

Judge Severson's Order was not contrary to law. Fed. R. Civ. P. 26(a)(2)(B) requires a report from witnesses whom a party "retain[s] or specially employ[s] to provide expert testimony

---

[18] *Id.* at 1148 (citations omitted).

[19] *Heartland Surgical Specialty Hosp., LLC v. MidWest Div., Inc.*, No. 05-2164, 2007 WL 9723883, at *3 (D. Kan. May 29, 2007) (placing burden on party seeking review).

[20] *Dona't v. Amazon.com/Kindle*, 482 F. Supp. 3d 1137, 1143 (D. Colo. 2020).

[21] Richard L. Marcus, *Federal Practice & Procedure*, § 3069 (3d ed., 2024).

[22] *See* Doc. 114 at 1.

in the case." The touchstone inquiry for whether a party retains a witness for the purpose of providing testimony is "the scope of the proposed testimony."[23] And when a witness seeks to offer opinion testimony based on facts known to him through his "prior course of business dealings" with a party, the witness has not been retained for the purpose of providing expert testimony.[24] A helpful example (which Judge Severson offered) is a treating physician who need not submit a report so long as her testimony does not "extend[] beyond the facts made known to him during the course of the care and treatment of the patient."[25] The bottom line: a report is not required when the witness forms opinions and obtains information "by virtue of his involvement in the transactions or occurrences giving rise to the litigation."[26] Judge Severson applied that standard. She concluded that Rogers' opinions did not go beyond the course of his prior dealings with Plaintiff because he updated the spreadsheets with the new information as part of his agreement to calculate the variable fee—an agreement developed during prior business dealings.[27]

Never mind that, say Defendants. The mere fact that Rogers' spreadsheet incorporated documents brought to his attention only after litigation started transformed him into a retained expert. In other words, once Rogers incorporated those new post-litigation documents into the spreadsheet, he became a retained expert. But Defendant's argument fails to persuade the Court.

---

[23] *Thermal Sols., Inc. v. Imura Int'l U.S.A., Inc.*, 08-2220, 2010 WL 1143 1472, at *7 (D. Kan. Apr. 28, 2010).

[24] *Chambers v. Fike*, No. 13-1410, 2014 WL 3565481, at *4 (D. Kan. July 18, 2014)); *see also Full Faith Church of Love W., Inc. v. Hoover*, No. 01- 2597, 2003 WL 169015, at *1–2 (D. Kan. Jan. 23, 2003) (finding that witness was not retained because the "proposed testimony . . . involves facts which [the witnesses] learned during the course of their work as general contractors").

[25] *Cadence Educ., LLC v. Vore*, No. 17-2092, 2018 WL 2926442, at *2 (D. Kan. June 7, 2018) (internal quotation marks omitted) (quoting *Chambers*, 2014 WL 3565481, at *4.).

[26] *Thermal Sols.*, 2010 WL 11431472, at *6.

[27] *See* Doc. 106 at 16.

Rogers did not update the documents for the purpose of providing expert testimony; as Judge Severson found, he did so as part of his pre-litigation effort to calculate the variable fee.[28] It is true that several of the cases cited in the March 13 Order make a distinction between information obtained pre-litigation and post-litigation, and they then find that reliance on post-litigation documents required a report.[29] But as Judge Severson correctly pointed out, this case is distinguishable. Here, Rogers' "course of business dealings"—updating the spreadsheet to calculate the variable fee—continued after litigation began; it did not stop before. And thus, unlike in the cases relied on by Defendants, incorporating post-litigation documents can still be part of the "course of business dealings" and unrelated to retention for the purpose of providing expert testimony. Judge Severson again illustrated this well with the example of a treating physician: this situation is akin to a "non-retained treating physician [who] can continue to opine regarding charges to an injured Plaintiff's treatment and medical condition *during the course of litigation*."[30] Judge Severson's conclusion was not contrary to law—it was a reasonable application of the law to these facts. Defendants' Motion to Review is therefore denied.

---

[28] *See id.*

[29] *See, e.g.*, *Cadence Educ.*, 2018 WL 2926442, at *3.

[30] Doc. 106 at 18 (emphasis added). Defendants' remaining arguments embrace a mix of hyperbole, misreading, and misleading quotation. Defendants first harangue that Judge Severson's Order will permit "trial by ambush," Doc. 114 at 2, "unfairly strips Defendants of their right to a fair fight," *id.* at 3, and violates their "procedural due process guarantees," *id.* at 4. Defendants ground none of those arguments in law; their only grounding is in overheated hyperbole. Defendants next accuse Judge Severson—or, in Defendants' appellation, "J. Severson"—of substituting the applicable legal standard for her "personal opinion" and then "decid[ing] to ignore the applicable standard because she believed" that Defendants owed to Plaintiff a "pre-suit legal duty to produce specific documents." Doc. 114 at 8. The problem with Defendants' argument—even setting aside the disrespectful tone—is that what Judge Severson did was more benign than all that. She did note that the documents "should have been provided" to Rogers. Doc. 114 at 19. But her point (and this was dispositive) was that Rogers' opinions based on the post-litigation documents remained part of his "prior course of business dealings" with Plaintiff, even if Defendants disclosed them only after they filed suit. *Id.* at 19. Defendants' final recourse is to misleadingly quote Judge Severson's Order by adding bracketed language to her Order. Defendants alter "should have been provided to him . . . during their business dealings" to "should have [voluntarily] provided [additional documents] to [Rogers] . . . during their [**pre-litigation**] business dealings with Plaintiff." *Compare* Doc. 106 at 19 *with* Doc. 114 at 2. These alterations are substantive and not supported by the context around the quoted language. None of Defendants' tactics persuade the Court that Judge Severson's March 13 Order was contrary to law.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Objection to and Motion for Review of Magistrate Judge's Order Regarding Motion to Strike Limited Opinions of Chuck Rogers for Failing to Provide Rule 26(a)(2)(B) Report (Doc. 114) is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Surreply to Defendants' Reply in Support of Its Motion to Review Magistrate Judge's Order Regarding Motion to Strike Limited Opinions of Chuck Rogers (Doc. 122) is moot.

**IT IS SO ORDERED.**

Dated: May 12, 2025

                                                   S/ Julie A. Robinson
                                                   JULIE A. ROBINSON
                                                   UNITED STATES DISTRICT JUDGE